**ROBERT'S HAIR DESIGNERS, INC.**
**d/b/a Robert's Salon & Day Spa,**
**Appellant–Plaintiff,**

v.

**Dana PEARSON and Jane R. Walsh,**
**Appellees–Defendants.**

No. 49A04–0208–CV–401.

Court of Appeals of Indiana.

Dec. 31, 2002.

Michael A. Wukmer, Melanie E. Harris, Ice Miller, Donadio & Ryan, Indianapolis, IN, for Appellant.

Ronald E. Drury, Greenwood, IN, for Appellees.

## OPINION

SHARPNACK, Judge.

Robert's Hair Designers, Inc., d/b/a Robert's Salon & Day Spa ("Robert's Salon" or "Salon"), appeals the trial court's denial of its motion for a preliminary injunction against Dana Pearson and Jane Walsh. Robert's Salon raises five issues, which we consolidate and restate as:

I. Whether the trial court's conclusion that Robert's Salon was unable to demonstrate irreparable harm is clearly erroneous;

II. Whether the trial court's conclusion that the threatened injury to Pearson and Walsh by granting a preliminary injunction outweighed any potential harm to Robert's Salon is clearly erroneous; and

III. Whether the trial court's conclusion that the public interest would be disserved by the grant of a preliminary injunction is clearly erroneous.

We reverse and remand.

The relevant facts follow. Robert's Salon is a salon and spa in Greenwood, Indiana, that provides a variety of services, including hair styling, massage, cosmetics, and manicure services. The salon employs approximately eighty employees, including forty hair stylists, fourteen receptionists, a general manager, and an assistant manager. Pearson and Walsh were employed at the salon as hair stylists for sixteen years and thirteen years, respectively.

In January of 2002, Pearson and Walsh each signed a "Confidentiality, Non–Solicitation and Non–Compete Agreement," which provided in pertinent part:

III. *RESTRICTIVE COVENANTS*

A. *Non–Competition.* During the Restricted Period, Employee SHALL NOT, directly or indirectly, perform on behalf of any Competitor of the Employer the same or similar services as those Employee performed for the Employer during the twelve (12) month period immediately preceding the termination of Employee's employment. The non-competition restriction set forth in this paragraph shall apply to any location within eight (8) miles of the principal location of Employer, 899 Loews Boulevard, Greenwood, Indiana 46142.

B. *Non–Solicitation.* During the Restricted Period, Employee SHALL NOT contact or solicit any of Employer's Clients or Customers or any prospective Clients or Customers, which Clients or Customers are proprietary to the Employer, and with whom the Employee has had contact or solicited any time in the twelve (12) month period of time preceding the termination of Employee's employment, to (1) divert or influence or attempt to divert or influence any business of the Employer to a Competitor of the Employer, (2) market, distribute, sell or provide any products or services in competition with Employer or (3) otherwise interfere in any fashion with Employer's business or operations then being conducted by the Employer.

\* \* \* \* \*

IV. *GENERAL PROVISIONS*

A. *Remedies.* Upon any breach of this Agreement by Employee, Employer shall be entitled to each of the following remedies which shall be deemed cumulative:

1. *Injunctive Relief.* Any violation by Employee of this Agreement will cause the Employer to suffer irreparable harm for which the Employer will not have an adequate remedy at law. Therefore, if Employee threatens to violate or violates any provision of this Agreement, the Employer shall be entitled to injunctive relief, including, but not limited to a temporary restraining order and/or a preliminary or permanent injunction to restrain or enjoin any violation or threatened violation of this Agree-

ment. The Employer shall be entitled to immediate injunctive relief without notice and without the posting of any bond. The Employer's right to injunctive relief shall be in addition to, and not in lieu of, any other remedy that may be sought by Employer.

2. *Damages.* To the extent calculable, Employer shall be entitled to recover from Employee, monetary damages, including lost profits. For purposes of determining such damages, the parties agree that any gross profits earned by Employee's new employer as a direct or indirect result of any activity of Employee in violation of this Agreement shall be deemed "lost profits" of the Employer.

Appellant's Appendix at 213–214, 226–227.[1]

In late 2001 and early 2002, Pearson and Walsh became dissatisfied with their employment at Robert's Salon. Both Pearson and Walsh began informing clients that they were considering leaving Robert's Salon. In July of 2002, Pearson and Walsh made arrangements to work as hair stylists for Design Lines Hair Salon ("Design Lines"), a salon within one-half of a mile of Robert's Salon. During the next two weeks, Pearson continued working at Robert's Salon and informed "every customer" that she was leaving Robert's Salon and would be working at Design Lines. Appellant's Appendix at 127. She told the customers that she would be pleased if they followed her. Pearson also telephoned customers to tell them that she was leaving Robert's Salon and that she was going to work at Design Lines.

Walsh informed three or four customers a day that she was leaving Robert's Salon and would be working at Design Lines.

Pearson and Walsh left the employment of Robert's Salon on July 20, 2002. They started working at Design Lines the following week. Both Pearson and Walsh had appointments scheduled for their first day at Design Lines. Walsh admitted that almost all of her customers at Design Lines also had been her customers at Robert's Salon.

On August 6, 2002, Robert's Salon filed a complaint against Pearson and Walsh for injunctive relief and damages. The trial court issued a temporary restraining order on August 6, 2002, and set a hearing for August 15, 2002, regarding Robert's Salon's request for a preliminary injunction. After the preliminary injunction hearing, the trial court denied Robert's Salon's request for a preliminary injunction and issued the following findings of fact and conclusions thereon:

### FINDINGS OF FACT

1. [Pearson and Walsh] were hair stylists for [Robert's Salon] for many years and were expected to develop client loyalty for [Robert's Salon] by providing excellent customer service and by developing a friendly client relationship.

2. All stylists were required to execute a Confidentiality, Non–Solicitation and Non–Compete Agreement with a one-year, eight-mile covenant not to compete and a non-solicitation of client provision, among others.

---

1. We note that although the agreement contains language that Robert's Salon "shall be entitled to injunctive relief" for any violation or threatened violation of the agreement, we have held that such contract provisions *re-quiring* the issuance of an injunction are not binding upon the trial court. *See Ed Bertholet & Assoc., Inc. v. Stefanko,* 690 N.E.2d 361, 364 (Ind.Ct.App.1998), *reh'g denied.*

3. [Pearson and Walsh] terminated their employment with [Robert's Salon] and began working at Design Lines Hair Salon, a competing salon around the corner from [Robert's Salon].

4. [Robert's Salon's] revenues increased after [Pearson and Walsh] terminated their employment.

## CONCLUSIONS OF LAW

1. Employment noncompetition agreements are in restraint of trade and not favored by the law.

2. [Robert's Salon] is unable to demonstrate any economic loss or loss of goodwill resulting from [Pearson's and Walsh's] actions.

3. [Robert's Salon] is unable to demonstrate any irreparable harm resulting from [Pearson's and Walsh's] actions.

4. The threatened injury to [Pearson and Walsh] by grant of an injunction outweighs any potential harm to [Robert's Salon].

5. The public interest will be disserved by granting injunctive relief.

**IT IS THEREFORE ORDERED** that [Robert's Salon's] Request for Injunctive Relief is denied.

Appellant's Appendix at 5–6.

■ Robert's Salon appeals the denial of its request for a preliminary injunction. The grant or denial of a request for a preliminary injunction rests within the sound discretion of the trial court, and our review is limited to whether there was a clear abuse of that discretion. *Ind. Family and Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 161 (Ind.2002). When determining whether to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. *Barlow v. Sipes*, 744 N.E.2d 1, 5 (Ind.Ct.App.2001) (citing Ind. Trial Rule 52(A)), *trans. denied*. When findings and conclusions thereon are made, we must determine if the trial court's findings support the judgment. *Id.* We will reverse the trial court's judgment only when it is clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *CSX Transp., Inc. v. Rabold,* 691 N.E.2d 1275, 1277 (Ind.Ct. App.1998), *trans. denied.* We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. *Barlow,* 744 N.E.2d at 5. Moreover, "[t]he power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor." *Id.*

■ To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that:

1) [movant's] remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action;

2) it had at least a reasonable likelihood of success at trial by establishing a prima facie case;

3) its threatened injury outweighed the potential harm to appellant resulting from the granting of an injunction; and

4) the public interest would not be disserved.

*Walgreen,* 769 N.E.2d at 161. The movant must prove each of these requirements to

**864**

obtain the preliminary injunction. *McGlothen v. Heritage Envtl. Servs., L.L.C.,* 705 N.E.2d 1069, 1074 (Ind.Ct.App. 1999).

Initially, we observe that Pearson and Walsh make no claim that the agreement is unreasonable in terms of time, geography, or types of activity that it prohibits. Additionally, the parties do not dispute that Robert's Salon had a reasonable likelihood of success at trial and the trial court made no finding or conclusion on this issue. Rather, Robert's Salon contends that the trial court was clearly erroneous when it determined that Robert's Salon failed to demonstrate irreparable harm, that the threatened harm to Pearson and Walsh from the granting of a preliminary injunction outweighed the harm to Robert's Salon, and that the public interest would be disserved by granting the preliminary injunction.

I.

█ The first issue is whether the trial court's conclusion that Robert's Salon was unable to demonstrate irreparable harm is clearly erroneous. The trial court concluded that Robert's Salon was "unable to demonstrate any economic loss or loss of goodwill resulting from [Pearson's and Walsh's] actions" and that Robert's Salon was "unable to demonstrate any irreparable harm resulting from [Pearson's and Walsh's] actions." Appellant's Appendix at 5. Robert's Salon argues that the trial court erroneously found that Robert's Salon was unable to demonstrate irreparable harm only because its overall business revenues increased in the one-week period after Pearson and Walsh terminated their employment. However, Robert's Salon asserts that it showed irreparable harm because it "may never be able to precisely calculate the injury that is occurring to the business as a result of the repeated violations by Pearson and Walsh" and even if

such damages could be calculated, "such a remedy would do absolutely nothing to prevent future breaches...." Appellant's Brief at 23.

█ Our supreme court recently noted that if an adequate remedy at law exists, injunctive relief should not be granted. *Walgreen,* 769 N.E.2d at 162. The trial court "has a duty to determine whether the legal remedy is as full and adequate as the equitable remedy." *Washel v. Bryant,* 770 N.E.2d 902, 906–907 (Ind.Ct. App.2002). "A legal remedy is adequate only where it is as plain and complete and adequate—or, in other words, as practical and efficient to the ends of justice and its prompt administration—as the remedy in equity." *Id.* at 907. A party suffering "mere economic injury is not entitled to injunctive relief because damages are sufficient to make the party whole." *Walgreen,* 769 N.E.2d at 162.

█ Here, the trial court found that Robert's Salon's revenues increased after Pearson and Walsh left. Although there is evidence in the record to support this finding, the trial court then concluded that Robert's Salon failed to demonstrate any economic loss resulting from Pearson's and Walsh's activities. We disagree. The irreparable injury requirement does not demand that Robert's Salon point to specific losses in the business, *Norlund v. Faust,* 675 N.E.2d 1142, 1149 (Ind.Ct.App.1997), *clarified on denial of reh'g,* 678 N.E.2d 421 (Ind.Ct.App.1997), *trans. denied.* In any event, the evidence demonstrated that Robert's Salon had suffered economic losses as a result of Pearson's and Walsh's actions.

Pearson admitted that upon deciding to leave Robert's Salon and work at Design Lines, she informed "every customer" that she served at Robert's Salon that she was leaving and would be working at Design

Lines. Appellant's Appendix at 127. She told those customers that she would be pleased if they followed her. Pearson also telephoned other customers to tell them where she was going to work. Walsh admitted that she informed three or four customers a day that she was leaving Robert's Salon and would be working at Design Lines. After leaving Robert's Salon, both Pearson and Walsh had appointments scheduled for their first day at Design Lines. Walsh admitted that most of the customers that she served at Design Lines also had been her customers at Robert's Salon.

At the preliminary injunction hearing, Robert Pence, president and owner of Robert's Salon, testified that although he could not name the customers that the salon had lost as a result of Pearson's and Walsh's departure, Pearson and Walsh had served thirty-five to forty customers a week. After Pearson and Walsh left the employment of Robert's Salon, Robert's Salon no longer received phone calls regarding Pearson and Walsh and "no longer [had] any of those customers on ... [its] books." *Id.* at 62.

The evidence presented at the preliminary injunction hearing clearly establishes that as a direct result of Pearson's and Walsh's actions Robert's Salon lost customers, namely, those customers served by Pearson and Walsh. Simply looking at the Salon's increase in revenues after Pearson and Walsh left is not sufficient. Had Pearson and Walsh not left the employment of Robert's Salon and not taken the customers that they served, Robert's Salon's increase in revenues would have been even greater. The trial court's finding that Robert's Salon failed to demonstrate any economic loss is clearly erroneous.

Moreover, although Robert's Salon demonstrated that it had suffered some economic loss, it is irrelevant that it was unable to quantify the loss. In fact, as we noted in *Norlund*, if Robert's Salon could point to a specific dollar amount of losses, then a remedy at law would be sufficient. *Norlund*, 675 N.E.2d at 1149. Furthermore, even if Robert's Salon could have quantified its losses up to the date of the preliminary injunction hearing, losses to Robert's Salon's good will as a result of Pearson's and Walsh's current and future violations of the agreement would warrant a finding of irreparable harm.

We recently addressed this issue in the context of a covenant not to compete between an employer beauty salon and an employee hair stylist. *See Washel*, 770 N.E.2d at 904. There, Bryant worked as a hair stylist for Washel's beauty salon pursuant to an employment agreement. *Id.* The employment agreement provided that Bryant could not open a competing beauty salon within ten miles for two years from the date she left Washel's employment. *Id.* The agreement also contained a liquidated damages clause for violations. *Id.* When Bryant left Washel's employment and opened a competing beauty salon three miles away, Washel filed a complaint seeking damages and injunctive relief. *Id.* The trial court found that the agreement's liquidated damages clause provided Washel with an adequate legal remedy and denied the request for injunctive relief. *Id.*

We held that the liquidated damages clause was not the exclusive remedy available to Washel and that "the trial court's finding that liquidated damages, standing alone, provided Washel with an adequate legal remedy was clearly erroneous." *Id.* at 906. We clarified that "money damages and injunctive relief serve different purposes." *Id.* Money damages are "intended to quantify the cost for violations of the agreement after-the-fact, while the injunctive remedy [is] meant to prevent future violations of the agreement." *Id.* Specifi-

cally, we held that the agreement did not preclude injunctive relief because:

money damages will not remedy the on-going violation of the covenant—the operation of a competing hair salon within ten miles for two years following separation. While damages might compensate Washel for Bryant's separate violations after-the-fact, it cannot prevent Bryant from repeatedly violating the agreement's non-competition clause by operating her own business. This is exactly the type of breach for which injunctive relief is particularly well suited. Without an injunction, Washel would be forced to amend her complaint repeatedly to include every successive violation (possibly every day that Bryant's shop remains open) after filing her original complaint.

Worse yet, the trial court could issue its final judgment before the two-year limitation period in the non-competition clause expires. Obviously, Washel can only collect damages for after-the-fact violations that occur from the first violation until the court's final judgment. The two-year period does not end until April 2, 2003. And if, for example, the trial court were to issue its final judgment in December 2002, without an injunction, Bryant could continue to operate her competing hair salon in violation of the parties' agreement for some three additional months. A party that suffers economic injury that cannot be remedied by post-trial damages is entitled to injunctive relief. To collect damages resulting from Bryant's continued violation, Washel would have to file a second lawsuit—one virtually identical to this one—in order to seek redress. Washel should not be forced to file more than one suit to remedy a continuous violation. That type of duplicitous litigation is neither a practical nor efficient method by which to serve the ends of justice.

*Id.* at 907–908 (internal citations omitted). We reversed, holding that Washel's remedies at law were inadequate and that she would be subjected to irreparable harm without injunctive relief.

We reached a similar conclusion in *Norlund,* 675 N.E.2d 1142. In *Norlund,* Dr. Faust, an ophthalmologist, hired Dr. Norlund, an optometrist, to obtain referrals from other area optometrists for secondary eye care. *Id.* at 1146. Dr. Norlund entered into an employment agreement that contained a covenant not to compete. *Id.* at 1146–1147. Dr. Norlund later assisted his wife, also an optometrist, in setting up a facility to compete with Dr. Faust's business. *Id.* at 1147. Dr. Faust sought and received a preliminary injunction to enforce the covenant not to compete. *Id.* at 1148. On appeal, Dr. Norlund argued that Dr. Faust had failed to demonstrate irreparable harm. *Id.* at 1149–1150.

We affirmed, holding that the trial court's findings and conclusions thereon reflected irreparable harm to Dr. Faust. *Id.* at 1150. We stated:

Appellants first argue that Faust has not carried his burden of showing that his remedies are inadequate at law and that he will suffer irreparable harm. It is true that a party seeking an injunction must show irreparable injury. However, the irreparable injury requirement does not demand that Faust point to specific losses in his business. As stated by the trial court: "[i]njunctive relief is appropriate if it is more practical or efficient than that afforded by law." In fact, if Faust could point to a specific dollar amount of losses, then a remedy at law would be sufficient. When a covenant not to compete of this nature is breached, it follows that the employer will suffer harm. It would be pure spec-

ulation to place a dollar amount on the damages, and an injunction against the prohibited behavior is the most efficient way to lift the burden of that harm from the shoulders of the employer who contracted so as not to suffer such harm. The trial court properly concluded that the remedies at law that were available to Faust would be insufficient.

*Id.* at 1149–1150 (internal citations omitted).

Here, Pence testified that he requires hair stylists to sign noncompetition agreements to "protect the customer relationship." Appellant's Appendix at 45. He explained Pearson's and Walsh's actions were "tearing up customer good will" because he did not have an opportunity to address the customer. *Id.* at 59. He contended that without protection of the "customer confidentiality and customer good will," his business "is very vulnerable to outside competitors." *Id.*

As we noted in *Washel*, this is exactly the type of breach for which injunctive relief is particularly well suited. *Washel*, 770 N.E.2d at 907. Robert's Salon is entitled to the benefit of ·Pearson's and Walsh's covenants not to compete. *Id.* at 906. While damages might compensate Robert's Salon for Pearson's and Walsh's violations after-the-fact, it cannot prevent Pearson and Walsh from repeatedly violating the agreement's noncompetition clause by taking Robert's Salon's customers and serving them just around the corner. The legal remedy here is not "as plain and • complete and adequate—or, in other words, as practical and efficient to the ends of justice and its prompt administration—as the remedy in equity." *Id.* at 907. Thus, the trial court's conclusion that Robert's Salon failed to demonstrate irreparable harm is clearly erroneous.[2] *See, e.g., McGlothen,* 705 N.E.2d at 1074–1075 (holding that an employer demonstrated that it would suffer irreparable harm from an employee's breach of his noncompetition agreement including damage to its reputation, damage to its good will, possible downsizing and laying off employees,

2. We acknowledge that other panels of this court have found adequate remedies at law in cases of breaches of covenants not to compete. *See Ed Bertholet & Assoc., Inc. v. Stefanko,* 690 N.E.2d 361, 364 (Ind.Ct.App. 1998), *reh'g denied,* and *Mercho–Roushdi–Shoemaker–Dilley–Thoraco–Vascular Corp. v. Blatchford,* 742 N.E.2d 519, 526 (Ind.Ct.App. 2001). However, those cases are distinguishable from the instant case.

For example, in *Stefanko,* another panel of this court discussed a bail bondsman who violated his covenant not to compete. 690 N.E.2d at 364. The panel held that the employer had "failed to show that its remedies at law would be inadequate" because the employment contract contained a liquidated damages provision which required the employee to pay 15% of any bonds he wrote while in violation of the covenant not to compete. *Id.* Thus, the employer had "set an adequate monetary remedy in the liquidated damages provision," and an adequate remedy at law existed. *Id.* Here, by contrast, the contract does not contain a liquidated dam-

ages provision. Moreover, in *Washel*, we clarified that injunctive relief and money damages serve different purposes. *Washel*, 770 N.E.2d at 906. An award of money damages does not prevent Pearson and Walsh from repeatedly violating the agreement's noncompetition clause. In *Washel*, we also noted that the issue of an adequate legal remedy in *Stefanko* was dicta and not precedent on this issue. *Id.* at 908.

In *Mercho–Roushdi,* another panel of this court discussed physicians who violated their covenants not to compete with a physician group. There, the evidence, including the testimony of an accountant experienced in valuing professional medical corporations, demonstrated that any damage suffered by the physician group was calculable in economic terms. *Id.* at 526. Thus, the panel held that the physician group failed to demonstrate an inadequate remedy at law. *Id.* However, here, money damages do not allow Robert's Salon the benefit of the covenant not to compete that Pearson and Walsh executed.

and harm from permitting the employee to continue to breach his noncompetition agreement while using confidential information that he admitted he appropriated from the employer); *see also Barlow,* 744 N.E.2d at 7 (noting that the plaintiff had no idea of the number of customers they lost as a result of the defendant's conduct, and equitable relief was necessary in order to provide the plaintiff a complete remedy for its economic injury because money damages could not be calculated with any predictability or certainty).

## II.

The next issue is whether the trial court's conclusion that the threatened injury to Pearson and Walsh by granting a preliminary injunction outweighed any potential harm to Robert's Salon is clearly erroneous. The trial court concluded that "[t]he threatened injury to [Pearson and Walsh] by grant of an injunction outweighs any potential harm to [Robert's Salon]." Appellant's Appendix at 5. However, none of the trial court's findings support this conclusion. The trial court's findings do not discuss how Pearson and Walsh would be harmed by the granting of a preliminary injunction. Additionally, the only finding regarding harm to Robert's Salon provides that Robert's Salon's revenues increased in the weeks following Pearson's and Walsh's departure. Although this finding is supported by the evidence, we have found that the trial court's conclusion that Robert's Salon demonstrated no economic harm as a result of Pearson's and Walsh's actions is clearly erroneous. *See supra* Part I.

Robert's Salon points out evidence in the record that would ultimately support a balance of the equities in favor of Robert's Salon. For example, Pearson and Walsh are free to obtain employment outside the eight-mile area surrounding Robert's Sa-

lon. In fact, Pence offered to help them obtain employment outside the eight-mile radius. Pearson lives seven miles from Robert's Salon and would only need to drive one mile to work outside the eight-mile radius. Walsh lives 3.4 miles from Robert's Salon and would only need to drive 4.6 miles to work outside the eight-mile radius. On the other hand, as we have noted, Robert's Salon is suffering economic harm, losing the benefit of the covenant not to compete, and losing customer good will.

While we recognize that "it would be improper for this court to balance the equities anew and substitute our judgment for that of the trial court," we also may not "add anything to the trial court's findings of fact by presumption, inference or intendment." *Cobblestone II Homeowners Ass'n, Inc. v. Baird,* 545 N.E.2d 1126, 1129 (Ind.Ct.App.1989). The specific findings must support the trial court's decision. *Id.* However, here, the trial court's factual findings do not show that "the equities favor the denial of the injunction." *Id.* Thus, the trial court's conclusion that the threatened injury to Pearson and Walsh by granting a preliminary injunction outweighed any potential harm to Robert's Salon is clearly erroneous. *See, e.g., id.* (holding that the trial court's factual findings did not show that the equities favored the denial of the injunction, and the trial court abused its discretion by denying the requested injunctive relief).

## III.

The next issue is whether the trial court's conclusion that the public interest would be disserved by the grant of a preliminary injunction is clearly erroneous. The trial court concluded that the public interest would be disserved by granting injunctive relief. Whether a particular covenant is against public policy is a ques-

tion of law for the court to determine from all the circumstances, keeping in mind that persons should not be unnecessarily restricted in their freedom to contract. *Fumo v. Med. Group of Mich. City, Inc.,* 590 N.E.2d 1103, 1109 (Ind.Ct.App.1992), *reh'g denied, trans. denied.*

■ Pearson and Walsh argue that the relationship between a hair stylist and his or her customers is an important relationship and Robert's Salon "has no protectable interest in the relationship." Appellee's Brief at 11. We disagree. We have held that "an employer is entitled to contract to protect the good will of the business." *Cohoon v. Fin. Plans & Strategies, Inc.,* 760 N.E.2d 190, 195 (Ind.Ct. App.2001). Elements of good will "include secret or confidential information such as the names and addresses and requirements of customers and the advantage acquired through representative contact." *Id.* These are property rights that an employer is entitled to protect. *Id.*

■ Pearson and Walsh also argue that injunctive relief would be a disservice to the public interest because the agreements are void because they were "coerced" and "the agreement was so complex that no one could understand the provisions of the six page, single spaced agreement." Appellee's Brief at 12. Pearson and Walsh cite to no authority in support of this proposition. Moreover, the only factual basis for this argument is that each employee was taken to the salon's office individually for thirty-minute appointments, asked to sign the six-page, single-spaced agreement, and not given a copy of the agreement. Under Indiana law, a person is presumed to understand the documents which he or she signs and cannot be released from the terms of a contract due to his or her failure to read the documents. *Clanton v. United Skates of America,* 686 N.E.2d 896, 899–900 (Ind.

Ct.App.1997). Although a contract induced by fraud or duress is voidable, we see no evidence of fraud or duress here. *See, e.g., Raymundo v. Hammond Clinic Ass'n,* 449 N.E.2d 276, 282–283 (Ind.1983) (rejecting a physician's claim of duress in signing a covenant not to compete).

Robert's Salon argues that there is no evidence in the record to support the trial court's conclusion. We agree. As discussed above, we may not "add anything to the trial court's findings of fact by presumption, inference or intendment." *Cobblestone II,* 545 N.E.2d at 1129. The specific findings must support the trial court's decision. *Id.* Here, we see no evidence to support the trial court's conclusion that the public interest would be disserved by granting injunctive relief.

■ While we recognize that "[n]oncompetition agreements or covenants not to compete are in restraint of trade and are not favored by the law," *Titus v. Rheitone, Inc.,* 758 N.E.2d 85, 91 (Ind.Ct.App.2001), *trans. denied,* we also observe that "Indiana courts have long recognized and respected the freedom to contract." *Eck & Associates, Inc. v. Alusuisse Flexible Packaging, Inc.,* 700 N.E.2d 1163, 1167 (Ind.Ct.App.1998), *trans. denied.* "A very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties" exists reflecting "the principle that it is in the best interest of the public not to unnecessarily restrict peoples' freedom of contract." *Id.* We see nothing in the circumstances surrounding this covenant not to compete that overcomes the public interest in not unnecessarily restricting the parties' freedom of contract. The trial court's conclusion that the public interest would be disserved by granting Robert's Salon's request for a preliminary injunction is clearly erroneous. *See, e.g., Norlund,* 675 N.E.2d at 1153–1154 (ob-

serving that "[c]ovenants not to compete which restrict medical services in a particular area are not void per se as against public policy").

In summary, we hold that the trial court's conclusions that: (1) Robert's Salon failed to demonstrate irreparable harm; (2) the threatened harm to Pearson and Walsh from the granting of a preliminary injunction outweighed the harm to Robert's Salon; and (3) the public interest would be disserved by granting the preliminary injunction, are clearly erroneous. Consequently, the trial court abused its discretion by denying Robert's Salon's request for a preliminary injunction. *See, e.g., Washel,* 770 N.E.2d at 908 (holding that the trial court erred by denying the salon owner's request for injunctive relief).

For the foregoing reasons, we reverse the trial court's denial of Robert's Salon's request for a preliminary injunction and remand for proceedings consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., and NAJAM, J., concur.