**PRIMECARE HOME HEALTH,**
Appellant–Plaintiff,

v.

**ANGELS OF MERCY HOME HEALTH CARE, L.L.C. d/b/a Angels of Mercy Health Agency, Carol Carter, and Deanna Murray, Appellees–Defendants.**

No. 49A02–0403–CV–298.

Court of Appeals of Indiana.

March 21, 2005.

Rebekah N. Plowman, Epstein Becker & Green, P.C., Atlanta, GA, Russell L. Jones, Bryan S. Redding, Cohen Garelick & Glazier, P.C., Indianapolis, IN, Attorneys for Appellant.

Patricia Polis McCrory, Janet A. McSharar, Stephen D. LePage, Harrison & Moberly, L.L.P., Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff PrimeCare Home Health ("PrimeCare") brings an interlocutory appeal pursuant to Indiana Appellate Rule 14(A)(5), challenging the denial of its Emergency Motion for Preliminary In-

junction against Appellees–Defendants Angels of Mercy Home Health Care, L.L.C. d/b/a Angels of Mercy Health Agency ("Angels of Mercy"), Carol Carter ("Carter") and Deanna Murray ("Murray"), (collectively, "the Defendants"). We affirm.

### Issue

PrimeCare presents three issues, which we consolidate and restate as the following: whether the trial court abused its discretion by denying PrimeCare's motion for preliminary injunctive relief.

### Facts and Procedural History

PrimeCare is a provider of home health care services in Indiana. Angels of Mercy, incorporated July 31, 2003, is also a provider of home health care services in Indiana. Murray, previously employed by PrimeCare as a nurse-administrator, is now the administrator of Angels of Mercy. Carter and several other caregivers previously employed by PrimeCare are presently employed by Angels of Mercy. Also, Angels of Mercy provides services to an undetermined number of patients who previously received home health services through PrimeCare.

On February 3, 2004, PrimeCare filed its complaint for injunctive relief premised upon Indiana's Trade Secrets Act, Indiana Code Section 24–2–3–1, et seq. ("the Act"). Contemporaneously, PrimeCare filed an Emergency Motion for Preliminary Injunction "to enjoin Defendants from misappropriating Plaintiff PrimeCare's client list, which contains confidential patient information." (App. 27) PrimeCare also sought to enjoin Angels of Mercy from "providing any form of healthcare services to [PrimeCare] patients" and from "employing any person previously employed by Plaintiff PrimeCare to provide any form of healthcare services to patients identified in Plaintiff PrimeCare's client list." (App. 28)

On February 20, 2004, the trial court held a hearing on PrimeCare's motion for a preliminary injunction, at which the parties presented oral argument and affidavits. PrimeCare argued that Angels of Mercy "raided" PrimeCare of its patients and employees and that the defendants misappropriated a "customer list" that was a "trade secret" under Indiana law. (Tr. 6, 12.) Subsequently, PrimeCare argued that the Defendants used the "same information" as that appearing on a customer list. (Tr. 13.) The Defendants denied that they obtained a PrimeCare client list or that they improperly obtained information. Rather, the Defendants contended that caregivers who were employees-at-will of PrimeCare personally informed their patients that the caregivers were leaving PrimeCare and that the patients could choose to stay with the caregivers. At the conclusion of the hearing, PrimeCare additionally requested that Angels of Mercy be "enjoined from Medicare reimbursement for these patients." (Tr. 33.)

On March 2, 2004, the trial court entered its findings of fact, conclusions of law and order denying PrimeCare's motion for a preliminary injunction. PrimeCare now appeals.

### Discussion and Decision

In pertinent part, the trial court concluded that PrimeCare presented no evidence at the hearing that the Defendants misappropriated PrimeCare's client list. The court also determined that PrimeCare's client list is not a protected trade secret under the Act, and, accordingly, PrimeCare did not meet its burden of proof for the grant of injunctive relief. On appeal, PrimeCare argues that the trial court abused its discretion, because the record discloses that Defendants misappropriated PrimeCare's client list and "patient information contained therein" which

constitutes, in PrimeCare's view, a "trade secret." Appellant's Br. at 13.

The grant or denial of a request for a preliminary injunction rests within the sound discretion of the trial court, and our review is limited to whether the trial court clearly abused that discretion. *Short On Cash.net of New Castle, Inc. v. Dep't of Fin. Institutions*, 811 N.E.2d 819, 822 (Ind.Ct.App.2004). An injunction is an extraordinary equitable remedy, which should be granted only "in rare instances in which the law and facts are clearly within the moving party's favor." *Id.* at 823 (quoting *Barlow v. Sipes*, 744 N.E.2d 1,5 (Ind.Ct.App.2001), *trans. denied* ).

When Indiana Trial Rule 52 special findings and conclusions are made, we must determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* A judgment will not be reversed absent clear error. *Id.* Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences drawn from the evidence to support them. *Id.*

To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: (1) the movant's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the movant has at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) the threatened injury to the movant outweighs the potential harm to the non-movant resulting from the granting of the injunction; and (4) the public interest would not be disserved. *Robert's Hair Designers, Inc. v. Pearson*, 780 N.E.2d 858, 863 (Ind.Ct. App.2002). The movant must prove each of these requirements to obtain a preliminary injunction. *Id.* If the movant fails to prove even one of these requirements, the trial court's grant of an injunction is an

abuse of discretion. *Titus v. Rheitone, Inc.*, 758 N.E.2d 85, 91 (Ind.Ct.App.2001), *trans. denied.*

Because PrimeCare appeals from a negative judgment, it must demonstrate that the trial court's judgment is contrary to law; that is, the evidence of record and the reasonable inferences therefrom are without conflict and lead unerringly to a conclusion opposite that reached by the trial court. *Northern Elec. Co. v. Torma*, 819 N.E.2d 417, 421 (Ind.Ct.App.2004). We cannot reweigh the evidence or judge the credibility of any witness. *Id.* However, while we defer substantially to the trial court's findings of fact, we evaluate questions of law de novo. *Id.* at 422. Our review in this case focuses upon whether the identity of patients receiving care through a home health agency is a trade secret, and whether Defendants used improper means to acquire knowledge thereof.

Actual or threatened misappropriation of a trade secret may be enjoined. Ind.Code § 24–2–3–3. Indiana Code Section 24–2–3–2 defines a trade secret as:

Information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Accordingly, a protectable trade secret has four characteristics: (1) information, (2) which derives independent economic value, (3) is not generally known or readily acces-

sible by proper means by other persons who can obtain economic value from its use, and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy. *Northern Electric,* 819 N.E.2d at 425.

Pursuant to Indiana Code Section 24–2–3–2, " 'improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." "Misappropriation" is defined in pertinent part as: "disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret[.]" Ind. Code § 24–2–3–2(2)(A).

 Initially, PrimeCare claimed that the Defendants misappropriated a client list protectable under the Act, and then used that list to establish its own client base. What constitutes trade secret information is a determination for the court to make as a matter of law. *Franke v. Honeywell, Inc.,* 516 N.E.2d 1090, 1093 (Ind.Ct.App.1987), *trans. denied.* The threshold factors to be considered are the extent to which the information is known by others and the ease by which the information could be duplicated by legitimate means. *Id.* Information alleged to be a trade secret that cannot be duplicated or acquired absent a substantial investment of time, expense or effort may meet the "not readily ascertainable" component of a trade secret under the Act. *Amoco Product. Co. v. Laird,* 622 N.E.2d 912, 919 (Ind.1993). A customer list of names not able to be created by means outside the business operations of the list owner has been considered a trade secret. *Kozuch v. CRA–MAR Video Center, Inc.,* 478 N.E.2d 110, 113–14 (Ind.Ct.App.1985), *trans. denied.* Also, a compilation of documents including customer contact information, manufacturing costs, blueprints and price summaries has been afforded protection under the Act. *Infinity Products, Inc. v. Quandt,* 810 N.E.2d 1028, 1032 (Ind.2004), *trans. denied.*

However, regardless of whether a customer list may, in some circumstances, be considered a trade secret, PrimeCare did not show, prima facie, that the Defendants took its client list. PrimeCare did not identify any of its former clients who became clients of Angels of Mercy or submit into evidence a copy of its alleged client list. Rather, PrimeCare Divisional Director of Operations Ronald Knox averred: "PrimeCare believes that a review of Defendant Angel[s] of Mercy's client list will reveal that many of the same names found on PrimeCare's intake forms are now receiving services through Defendant Angels of Mercy." (App. 62)

During oral argument at the hearing, PrimeCare essentially abandoned its claim that the Defendants physically took its client list, but asserted that the Defendants "used the same patient information." (Tr. 13.) As such, we are not concerned with the typical scenario of an employee taking possession of a compilation of data and utilizing it. Rather, the gravamen of PrimeCare's complaint is that PrimeCare's former employees personally solicited patients in their care to become clients of Angels of Mercy.

 Independent of the existence of a client list, if any, Murray and Carter knew the identity of PrimeCare clients because of their employment with PrimeCare and their provision of services directly to the clients. They had no need to resort to improper means to gain that information. Generally known or readily ascertainable information is outside the statutory protection of the Act. *Amoco,* 622 N.E.2d at 919. Apart from statutory protection, goodwill generated between customers and a busi-

ness has been considered a legitimate protectable interest that may be addressed by a reasonable non-competition agreement or covenant not to compete. *Titus*, 758 N.E.2d at 92. Here, however, it is undisputed that Murray and Carter were employees-at-will, not subject to a non-competition agreement or covenant not to compete.

The present circumstances are analogous to those described in *Steenhoven v. College Life Ins. Co. of America*, 460 N.E.2d 973 (Ind.Ct.App.1984), where a former insurance company employee contacted clients, whose names appeared on a policyholder list, to offer replacement policies with another insurer:

> The real thrust of appellee's argument is not that Steenhoven disclosed College Life's customer list (at least as concerns his limited knowledge thereof), but rather, that Steenhoven used such list to benefit economically. College Life seemingly seeks not to protect a trade secret, but rather, to prevent competition by its former agent. Insofar as College Life attempts to merely restrain Steenhoven's competition, we believe the Uniform Trade Secrets Act to be an improper vehicle therefore. The fact that Steenhoven possesses certain knowledge acquired within the course of his employment does not mandate that, upon his departure, Steenhoven must wipe clean the slate of his memory. Rather, it is clear from the language of the act that the Uniform Trade Secrets Act was promulgated by the legislature to prevent the abusive and destructive usurpation of certain economically-imbued business knowledge commonly referred to as trade secrets. We do not believe the legislature ever intended the statute's provisions to act as a blanket post facto restraint on trade. If College Life had desired to prevent competition by its former agents based upon the agents' acquired knowledge, it could have done so contractually via the provisions of a covenant not to compete. Having forgone that possibility, we believe it misguided to attempt to stem such competition by arguing, in essence, that properly-acquired knowledge of the employer's business is automatically made a trade secret pursuant to the Act, without regard to the nature of the information, simply because it can be compiled into a table or a list.

460 N.E.2d at 975 n. 7.

■ Notwithstanding the proper acquisition of the Defendants' knowledge, and the lack of employee non-competition agreements, PrimeCare argues that the Defendants necessarily violated the Act because patients enjoy a right to privacy of their demographic and medical information under federal law. 45 C.F.R. § 164.501 et seq. Undisputedly, patients have privacy rights. However, there is no evidence that Angels of Mercy has any patient information not directly provided by a patient himself or herself. Moreover, PrimeCare is not seeking to redress a privacy violation under federal law on behalf of the patients. PrimeCare sought injunctive relief under the Act upon belief that its clientele and employees were raided.

■ Furthermore, even if PrimeCare demonstrated, prima facie, that a trade secret was misappropriated, PrimeCare has not shown that its remedies at law are inadequate.[1] PrimeCare concedes that patients have a right to choose their caregiver and that PrimeCare cannot, by

---

1. Accordingly, we do not address the remaining elements necessary to obtain a preliminary injunction.

court order, recover its patients. Instead, PrimeCare is concerned with recouping financial loss. Loss incurred that is essentially financial is usually insufficient to warrant the grant of equitable relief. *College Life Ins. Co. of America v. Austin,* 466 N.E.2d 738, 745 (Ind.Ct.App.1984). It is only when the remedy at law is inadequate and the damage is irreparable that the extraordinary remedy of a preliminary injunction is appropriate. *Short on Cash. net,* 811 N.E.2d at 823. As such, PrimeCare has demonstrated no abuse of discretion in the trial court's denial of preliminary injunctive relief.

Affirmed.

SULLIVAN, J., and MATHIAS, J., concur.