**Ronald G. MAYER, Karen Mayer, Theodore Schenberg, Patricia Schenberg, Gary Ryan and Lynn Ryan, Appellants–Plaintiffs,**

v.

**BMR PROPERTIES, LLC, Appellee–Defendant.**

No. 29A04–0501–CV–33.

Court of Appeals of Indiana.

July 15, 2005.

---

Peter S. French, Paula Zelman Finch, Sara R. Bradbury, Lewis & Kappes, Indianapolis, for Appellants.

Lante K. Earnest, Charles R. Whybrew, Tabbert Hahn Earnest & Weddle, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

The central dispute in this appeal from the trial court's interlocutory order refusing to grant a preliminary injunction is whether certain restrictive covenants on property located in Hamilton County known as Village Farms Hills 'n Dales (Hills 'n Dales) prohibit the appellee-defendant BMR Properties, LLC (BMR) from building more than one single family home on a particular tract in that subdivision. Appellants-plaintiffs Ronald and Karen Mayer, Theodore and Patricia Schenberg and Gary and Lynn Ryan (collectively, the appellants), appeal from the denial of their request for a preliminary injunction against BMR.

Specifically, the appellants contend that the trial court erred in denying their request for injunctive relief that would have prevented BMR from building a fifteen-home neighborhood that violated certain covenants and restrictions that allegedly encompassed the subdivision. Concluding

that BMR's property was not bound by the restrictions and covenants under these circumstances, and further observing that the general language that was included in the various deeds that the grantees would take the property "subject to" restrictions and covenants are to be considered words of qualification and not ones of contract, we affirm the trial court's denial of the appellants' request for injunctive relief.

### FACTS

Ralph Wilfong was the managing partner of Thirty–One Realty Investment Company (Thirty–One), an Indiana partnership. In 1973, the company purchased a number of acres of real estate near 151st Street and U.S. 31 in Hamilton County. Sometime during the late 1970s, Thirty–One separated the property—near what is now the Monon Trail and U.S. 31—into at least nineteen tracts. Thirty–One developed seventy-five acres into a low-density, estate home community of "mini-farms" that it named Hills 'n Dales. However, Thirty–One did not plat, publicize, or otherwise identify those tracts.

The nineteen tracts vary in size from tract eighteen, which is over fourteen acres, to tract twelve, which is less than one acre. From the late 1970s to the present, Thirty–One took no action to develop its property in an organized manner. To be sure, Thirty–One did not publish or record a plat, and it never recorded any supplemental declarations with regard to the property. Also, no homeowner's association was ever formed.

On February 8, 1978, Thirty–One recorded some Restrictions in the Hamilton County Recorder's Office as Instrument Number 9654, located in book 153, pages 133–39 (the Restrictions). It also recorded as Instrument Number 9655, located in book 153, pages 140–153, a "Declaration of Covenants and Restrictions" (Declaration). The Declaration provided in part that:

> Every numbered tract in the Development, unless it is otherwise designated by the Developer, is a residentail [sic] tract and shall be used exclusively for single family residential purposes. No structure shall be erected, placed or permitted to remain upon any of the said residential tracts, except a single family dwelling house and such outbuildings as are usually accessory to a single family dwelling house.

Appellants' App. p. 32. The Declaration also permits additional lands to be added to the covenants by the developer by either filing and recording a plat of Hills 'n Dales, or filing and recording a supplemental Declaration of Covenants and Restrictions by the declarant or its successor or by others upon the approval of Hills 'n Dales pursuant to a vote of its members.

The Restrictions further provided that

> All tracts in this subdivision shall be known and designated as residential tracts. No residential building shall be erected, altered, placed or permitted to remain on any tract other than one (1) single family dwelling.

Appellant's App. p. 23.

Both the Restrictions and Covenants encumbered tract ten of the Thirty–One property, and they do not describe, identify, or reference any of the other tracts. When the other tracts were conveyed, the deed in each instance stated that the conveyance is:

> Subject to area covenants and restrictions recorded February 8, 1978 as Instrument # 9654, Book 153, pages 133–139 and Instrument # 9655, Book 153, pages 140–153, in the Office of the Recorder of Hamilton County, Indiana.

Appellant's App. p. 209–91, 314–16.

The Restrictions and Covenants reference the Hills 'n Dales subdivision, platted

lands, supplementary declarations and a Hills 'n Dales Homeowners' Association. However, the "subdivision," platted lands, supplementary declarations, and a Hills 'n Dales Homeowners' Association have never existed. Moreover, the covenants and restrictions do not define the term "tract," and they do not limit the number of tracts within the Hills 'n Dales area to those 19 tracts of the Thirty–One property.

Sometime after 1978, Thirty–One began conveying tracts to individuals and various business entities. The Mayers own tract 6 of the Thirty–One property. Thirty–One had conveyed, among other tracts, tract 6 to Wilfong, as an individual, in November 1983 and did not subject tract 6 to the Restrictions and Covenants. Approximately four years later, Wilfong individually, conveyed the property to the Mayers "subject to" the Restrictions and Covenants. Additionally, at the time of purchase, the Mayers entered into a purchase agreements where Wilfong states, "[Tract 6] is described by metes and bounds, has not been platted and seller makes no representations as to [the] size or configuration of Hills 'n Dales Development." Appellee's App. p. 24–25. The record does not contain any evidence that Thirty–One or its successor filed and recorded either a plat or a supplemental declaration to include tract 6 under the documents described above. Also, there is no evidence that the addition of tract 6 to the restrictions was ever approved by a vote of the members of Hills 'n Dales.

The Schenbergs own tract 13 of the property. In October 1978, Thirty–One conveyed the property to them. The conveyance from Thirty–One was specifically made "subject to" the Restrictions and Covenants. As with the Mayer property, there was no evidence that Thirty–One ever filed and recorded either a plat or a declaration to include this tract under the

above documents, and the restrictions were not approved by a vote of the members of Hills 'n Dales.

The Ryans are the owners of tract 8 of the property. In December 1980, Thirty–One conveyed the Ryan Property to Clarence and Donna Crane by warranty deed. The conveyance from Thirty–One to the Cranes was made subject to the Restrictions and Covenants. In April 1981, the Cranes conveyed the Ryan Property to Charles and Susan Judge by warranty deed. This conveyance was also made "subject to" the Restrictions and Covenants. The Judges then conveyed the Ryan Property to Donovon Brown by way of warranty deed. The conveyance from the Judges to Brown was made "subject to" the Restrictions and Covenants. In September 1994, Brown conveyed the property to the Ryans by way of a warranty deed. The conveyance from Brown to the Ryans was made only "subject to any and all easements, agreements or restrictions of record," without any specific reference to the Restrictions and Covenants.

BMR currently owns real estate on Greyhound Pass that is referred to as tracts 9 and 19 of the Thirty–One property. These tracts were included in an original drawing in the form of an unrecorded plat of the land that was planned to be a part of the Hills 'n Dales subdivision. Thirty–One was a predecessor in title to BMR with regards to tracts 9 and 19. The parties here agree that tract 19 was never subject to the Restrictions and Covenants.

In May 1981, Thirty–One conveyed tract 9 to Will Wright Building Corporation (Will Wright) via warranty deed. The warranty deed states that tract 9 is "subject to" the Restrictions and Covenants. In September 1981, Will Wright conveyed the tract 9 deed to John and Mary Kaiser via corporate warranty. Unlike the conveyance from Thirty–One to Will Wright, the

conveyance to the Kaisers only subjects tract 9 "to easements, agreements or restrictions of record." That is, the deed contains no reference to the Restrictions and Covenants.

In August 1993, the Kaisers transferred tract 9 to Dr. James Davis by way of warranty deed. Again, this deed did not make any specific reference to the Restrictions and Covenants and only states that tract 9 is "subject to taxes, conditions, restrictions and easements of record." Tr. p. 241–43.

Thereafter, in December 1995, Dr. Davis transferred tract 9 to John Lohrmann by way of a warranty deed. This deed states only that tract 9 is "subject to any and all easements, agreements and restrictions of record," and it did not make any specific reference to the Restrictions and Covenants. Appellants' App. p. 246–48. Then, in April 1999, Lohrmann transferred tract 9 deed to Freedom Farms, LLC by way of a quitclaim deed. That deed did not subject tract 9 to any restrictions. In October 2000, Freedom Farms transferred tract 9 back to Lohrmann through a quitclaim deed. As before, the deed did not subject tract 9 to any restrictions.

In November 2002, Robert Schneider, Michael Johns and Richard Schneider formed BMR. In July 2003, Lohrmann transferred tract 9 to Robert through a warranty deed. The deed states that tract 9 was only "subject to any and all easements, agreements and restrictions of record." Appellants' App. p. 263. In September 2004, Robert transferred tracts 9 and 19 to BMR via warranty deed. The warranty deed did not subject either tract to the restrictions or covenants. On the other hand, the Lawyers Title Insurance Corporation issued a title commitment to the plats that contained the following exception:

Subject to 'Area Covenants and Restrictions' recorded February 8, 1978 in Miscellaneous Record 153, Pages 133–139 and Pages 140–153 in the office of the Recorder of Hamilton County, Indiana. Appellants' App. p. 313.

After purchasing tracts 9 and 19, BMR combined the two tracts for the purpose of developing a residential subdivision. The appellants were aware of this plan, and BMR proceeded to subdivide the property in order to develop what it called the Bainbridge Subdivision. Bainbridge was to contain fifteen separate residential building lots for the construction of single-family residences. The project was ultimately approved by Westfield Washington Township.

On September 10, 2004, BMR recorded a plat for the Bainbridge subdivision plat. At the same time, BMR obtained a construction loan of nearly one million dollars and began the development project. Water and sewer lines have been constructed, streets have been built and buffering trees have been planted along the perimeter of the tracts upon which single-family homes, each costing in excess of $600,000, will be located.

On October 6, 2004, the Mayers filed a complaint to enforce the restrictions and covenants that purportedly applied to the property. They sought injunctive relief, specific performance and damages. In particular, the Mayers requested that the trial court prevent BMR from constructing a fifteen-home neighborhood in Bainbridge, purportedly in violation of the plain language of the restrictive covenants of Hills 'n Dales. An amended complaint was filed, whereby the Mayers, Schenbergs and the Ryans requested the trial court to enjoin the construction of improvements located on BMR's property. The appellants asked for a preliminary injunction to keep BMR from violating the restrictive

covenants that limit each tract to one single-family home until final disposition of the case at bar on the merits.

In response, BMR asserted that the restrictions and covenants only encumbered tract 10 of the Thirty–One property because they did not describe, identify, or reference any of the remaining tracts. BMR alleged that tract 19 of the property was never subject to the restrictions and covenants. Also, with respect to tract 9, BMR maintained that the deed regarding the conveyance of this property made no specific reference to the original restrictions and covenants.

Following a hearing, the trial court issued an order on November 19, 2004, denying the appellants' request for a preliminary injunction. It reasoned that the appellants were not reasonably likely to succeed on the merits for the reason that the covenants and restrictions did not prevent BMR from subdividing one tract of land into several lots.

In part, the trial court's order provided:

15. The court finds that Plaintiffs have no right to prohibit the subdivision of Tract 19 which is not now and never has been subject to the covenants and restrictions set forth in paragraphs 2 and 3. Although Tract 19 was included in an unrecorded plat drawing for Village Farms Hills n Dales, it has never been properly added to the covenants as set forth in Article II, Section 2 of the Declarations of Covenants and Restrictions.

. . . . .

19. The provision of the covenants and restrictions which the Plaintiffs seek to enforce to terminate the development of Bainbridge is found at Article III Section 1 of the Covenants and Restrictions described in paragraph 3 above. This provision provides as follows:

SECTION 1. *IN GENERAL.* Every numbered tract in the Development, unless it is otherwise designated by the Developer, is a residentail [sic] tract and shall be used exclusively for single family residential purposes. No structure shall be erected placed on [sic] permitted to remain upon any of said residential tracts, except a single family dwelling house and such outbuildings as are usually accessory to a single family dwelling house. All tracts of land located within the Development which have not been designated by numbering as residential building tracts in the recorded plats may be designated to other land use, including commercial, provided the same is consistent with the development of a planned community. Developer reserves unto itself the right to change the character of the designated community or other land use at any time in the future and where necessary, to apply to the necessary governmental body for such reclassification rezoning [sic] or variance of use as needed to accommodate Developer's planned use.

20. The provision set forth in paragraph 19 has not been violated by the Defendants. They have subdivided one tract into several lots which is not a prohibited act under the covenants. Thus, if the covenants apply, the acts of the Defendant to date are not in violation of the covenants. It appears that the Defendant might be in violation of the covenants if it were to permit other than single family dwelling houses and such outbuildings as are usually accessory to a single family dwelling unit to be constructed on a

Bainbridge lot. The record herein does not permit that finding.

Appellants' App. p. 10–12. The appellants now appeal from this order.

## DISCUSSION AND DECISION

### I. Standard Of Review

As stated above, the appellants contend that the trial court erred in denying their request for a preliminary injunction. In essence, they maintain that the trial court misinterpreted the language set forth in the restrictive covenants when it determined that more than one single-family home could be built on each tract of land. And they further claim that injunctive relief should have been granted because valid restrictive covenants were created through the deeds to the parties.

In resolving this issue, we first set forth the relevant standard of review regarding the granting of injunctive relief. An injunction is an extraordinary equitable remedy, which should be granted only "in rare instances in which the law and facts are clearly with the moving party's favor." *Short On Cash.Net of New Castle, Inc. v. Dep't of Fin. Insts.*, 811 N.E.2d 819, 823 (Ind.Ct.App.2004). The grant or denial of a request for a preliminary injunction rests within the sound discretion of the trial court. *PrimeCare Home Health v. Angels of Mercy Home Health Care, LLC*, 824 N.E.2d 376, 380 (Ind.Ct.App.2005). Our review is limited to whether the trial court clearly abused its discretion. *Short On Cash.Net*, 811 N.E.2d at 822.

In order to obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: (1) the movant's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the movant has at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) the threatened injury to the movant outweighs the potential harm to the non-movant resulting from the granting of the injunction; and (4) the public interest would not be disserved. *Robert's Hair Designers, Inc. v. Pearson*, 780 N.E.2d 858, 863 (Ind.Ct. App.2002). The movant must prove each of these requirements to obtain a preliminary injunction. *Id.* If the movant fails to prove even one of these requirements, the trial court cannot grant an injunction. *Titus v. Rheitone, Inc.*, 758 N.E.2d 85, 91 (Ind.Ct.App.2001), *trans. denied.*

We also note that when special findings of fact and conclusions of law are made in accordance with Indiana Trial Rule 52, this court must determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* A judgment will not be reversed without clear error. *Id.* Findings of fact are clearly erroneous only when the record lacks evidence or reasonable inferences drawn from the evidence to support them. *Id.* Finally, inasmuch as the appellants are appealing from a negative judgment, they must demonstrate that the trial court's judgment is contrary to law. That is, the evidence of record and the reasonable inferences therefrom are without conflict and lead unerringly to a conclusion opposite that reached by the trial court. *Northern Elec. Co. v. Torma*, 819 N.E.2d 417, 421 (Ind.Ct.App.2004). We will not reweigh the evidence or judge the credibility of any witness. However, while we defer substantially to the trial court's findings of fact, we will evaluate questions of law de novo. *Id.* at 421–22.

### II. Injunction: The Restrictions and Covenants

In response to the appellants' arguments that the trial court should have granted their request for injunctive relief,

BMR points out that the restrictions and covenants do not prevent it from subdividing the various tracts. We note that a covenant is generally an agreement duly made "to do," or "not to do," a particular act. The term "covenant" generally describes promises relating to real property that are created in conveyances or other agreements, and a covenant may be express or implied. *Crawley v. Oak Bend Estates Homeowners' Ass'n,* 753 N.E.2d 740, 745 (Ind.Ct.App.2001). A restrictive covenant is an agreement between a grantor and a grantee in which the latter agrees to refrain from using his property in a particular manner. *Columbia Club, Inc. v. American Fletcher Realty Corp.,* 720 N.E.2d 411, 417–18 (Ind.Ct.App.1999). The covenanting parties' intent must be determined from the specific language used and from the situation of the parties when the covenant was made. *Id.* at 419. Furthermore, specific words and phrases cannot be read exclusive of other contractual provisions. *Id.* In addition, the parties' intentions must be determined from the contract read in its entirety. *Id.* We attempt to construe contractual provisions so as to harmonize the agreement. *Id.*

In light of the above, the appellants complain that the trial court simply looked to the Declaration language quoted above in isolation and erroneously concluded that BMR was entitled to subdivide tract 9 so long as only single family residences were placed on the lots. Contrary to this argument, there is no evidence in the Restrictions and Covenants that Thirty–One—the original grantor of the property—intended to limit the number of tracts located within the Hills 'n Dales area. As noted above, the term "tract" is not defined in the restrictions and covenants. And, as set forth in the covenants, the term "Development" "shall mean and refer to such properties and additions thereto, as are subject to the [the covenants] or any supplemental [Cov-

enants] under the provisions hereof." Appellants' App. p. 31. Hence, there is no showing that Thirty–One intended to limit the number of tracts within the alleged Hills 'n Dales to only those nineteen tracts of the property owned by Thirty–One.

We also observe that Thirty–One could have placed a provision in the covenants and restrictions forbidding the subdivision of one tract into others. Thirty–One could also have followed the normal practice of recording a legal plat, and it could have formed a homeowners' association or filed supplemental declarations in accordance with the language set forth in the Declaration. However, Thirty–One chose not to perform any of these actions. Just as compelling, we note that the appellants have not presented any evidence to the trial court demonstrating that Thirty–One intended Hills 'n Dales to be comprised solely of the nineteen tracts of the Thirty–One property. Hence, it is apparent that the appellants have failed to satisfy their burden of showing that the term "tract" was intended to mean the nineteen tracts of the Thirty–One Property or that Thirty–One intended not to allow the tracts to be subdivided. As a result, the trial court did not err in denying the appellants' claim for injunctive relief on this basis.

In conjunction with our discussion above, we again note that the circumstances in this case show that (1) only tract 10 is encumbered by the restrictions and covenants; (2) no other tract or other property was ever identified by a supplemental declaration because no such declaration was recorded; (3) no other tract or other property was ever defined, identified, or platted in any public instrument or record; and (4) a homeowners' association has never existed.

That said, we have declared that restrictive covenants are generally

disfavored by law and will be strictly construed by the court, which resolves all doubts in favor of the free use of property and against restrictions. *King v. Ehrens,* 804 N.E.2d 821, 826 (Ind.Ct.App.2004). Also, in determining whether a valid restrictive covenant exists, a court must determine if a general scheme or plan of development exists. *Elliot v. Keely,* 121 Ind.App. 529, 539–40, 98 N.E.2d 374, 379 (1951), *trans. denied.* The lack of uniformity in restrictions in a subdivision is evidence of the nonexistence of a general plan or scheme. *Id.* The fact that a majority of lots are conveyed without reference to restrictive covenants is evidence of the lack of a general plan or scheme. *McIntyre v. Baker,* 660 N.E.2d 348, 352 n. 2 (Ind.Ct. App.1996).

As indicated in the *FACTS,* Thirty–One owned numerous acres of real estate. When establishing particular tracts, it did so in a piecemeal fashion and did not prescribe to any common scheme or plan. Thirty–One never recorded a supplementary declaration subjecting the remaining tracts—other than tract 10—to the restrictions and covenants. The size of the tracts varied greatly, Thirty–One never recorded a plat, no homeowner's association was ever formed, and the various deeds do not reflect the conveyance of tracts within a subdivision or development that has been platted, organized or identified by a common plan or scheme. For these reasons— as well as those discussed above, the restrictions and covenants were not enforceable as to tract 9.

 Finally, we note that even though some of the deeds included language that the property was "subject to" covenants and restrictions, it is our view that such terms do not constitute an assurance that encumbrances either run with the land or that successors or assigns are bound by them. Thus, even if we were to conclude—solely for argument's sake—that the covenants and restrictions *did* apply to the property, such language merely makes the transfer of the various properties "subject to" any potential adverse effects of the restrictive covenants, thus limiting potential liability of the particular grantor.

Nonetheless, the appellants direct us to *Wischmeyer v. Finch,* 231 Ind. 282, 288, 107 N.E.2d 661, 664 (1952), *Keene v. Elkhart County Park and Rec. Bd.,* 740 N.E.2d 893, 897 (Ind.Ct.App.2000), and *Vierk v. Ritenour,* 131 Ind.App. 547, 555, 172 N.E.2d 679, 683 (1961), for the proposition that the "subject to" language set forth in the various deeds was sufficient to bind tract 9 with regard to the covenants and restrictions. However, those cases are distinguishable from the circumstances here. Specifically, in *Wischmeyer* and *Vierk,* a plat had been recorded. Also, in *Keene,* the interpretation of a covenant— rather than its existence—was at issue. Although we have found no Indiana case directly on point construing the "subject to" language set forth in these deeds under similar circumstances, we note that in *Smith v. Second Church of Christ, Scientist, Phoenix, Arizona,* 87 Ariz. 400, 351 P.2d 1104 (1960), a conveyance was made "subject to ... building and other restrictive covenants attaching to and running with the title, set forth in particular in Book 103 of Deeds, page 111." The Arizona Supreme Court determined that this particular statement was insufficient to bind a piece of real estate. In so holding, the *Smith* court stated:

> The creating of new restrictions on the use of land requires greater clarity and explicitness than are found in the deeds here in issue. Restrictive covenants will not be lightly inferred from the mere reference in a 'subject to' clause to a recorded instrument which contains otherwise inapplicable burdens.

*Id.* at 1108. The *Smith* court went on to note that the words "subject to" are words of qualification and not of contract. *Id.* at 1108–10.

Like the circumstances in *Smith,* we agree that the "subject to" clauses used in the various deeds here were simply not sufficient to impose the restrictions and covenants as to tract 9. As a result, for these additional reasons, we conclude that the trial court properly denied the appellants' request for injunctive relief.

The judgment of the trial court is affirmed.

KIRSCH, C.J., and BARNES, J., concur.