SHORT ON CASH.NET OF NEW CASTLE, INC., Appellant–Respondent,

v.

DEPARTMENT OF FINANCIAL INSTITUTIONS and Steve Carter, Attorney General of Indiana, Appellees–Petitioners.

No. 33A05–0401–CV–19.

Court of Appeals of Indiana.

June 29, 2004.

Bruce N. Munson, Muncie, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael T. Schaefer, David L. Steiner, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Respondent Short on Cash. Net of New Castle, Incorporated ("Short on Cash") appeals the trial court's grant of a preliminary injunction in favor of Appellees–Petitioners Department of Financial Institutions ("Department") and Steve Carter, Attorney General of Indiana (col-

lectively referred to as "Appellees"). We affirm.[1]

## Issue

Short on Cash raises two issues, which we consolidate and restate as whether the trial court abused its discretion by, first, invoking the *per se* rule applicable to preliminary injunctions because Short on Cash is not in the business of issuing small loans and, therefore, its business operations do not violate Indiana Code Section 24–4.5–7–410 and, second, granting the petition for preliminary injunction absent a showing of irreparable harm.

## Facts and Procedural History

On November 30, 2001, Short on Cash was established when its principal and registered agent, Kevin P. Short ("Short"), filed the company's Articles of Incorporation with the Indiana Secretary of State. Short on Cash purports to be an Internet service provider. Customers that purchase Internet service from Short on Cash receive an immediate cash rebate of one hundred dollars per Internet account opened. In exchange, the customer commits to a one-year Internet contract with Short on Cash and is obligated to make biweekly payments of twenty dollars for Internet service. If the customer terminates the contract prior to the expiration of the one-year period, he or she is obligated to repay the one-hundred-dollar rebate. Short on Cash does not limit the number of accounts that its customers may open. However, for each account opened, the customer receives a one hundred dollar rebate and is obligated to make bi-weekly payments of twenty dollars for the one-year contractual period.

Short on Cash customers have unlimited access to the Internet from their home computers. However, those that access the Internet from the computer located on Short on Cash's premises are limited to one hour of access per two-week period. In January of 2001, Short on Cash had a total of 100 to 120 customers; of this number, approximately twenty-five customers accessed the Internet from their home computers.

Short on Cash is located at 1819 South Memorial Drive, New Castle, Indiana. Previously, this location housed a small loan business known as Short on Ca$h, with Short as its principal and president. Short on Ca$h offered small loans to consumers "with contractual provisions for a single payment due approximately two weeks after the loan was made." Petitioner's Ex. 7. On November 27, 2001, Short notified the Department that, effective December 1, 2001, Short on Ca$h would no longer be providing a loan service to consumers. Short on Ca$h relinquished its loan license in May of 2002.

The business entity at issue, i.e., Short on Cash, does not have a license from the Department to issue loans. In addition to its business location, Short on Cash also uses the same phone number as Short on Ca$h and does not advertise itself as an Internet service provider.

On October 30, 2003, pursuant to Indiana Code Section 24–4.5–7–409(5),[2] Appellees filed their amended verified complaint for preliminary and permanent injunction against Short on Cash. After conducting a hearing, the trial court granted Appellees' petition for preliminary and permanent injunction and ordered Short

---

1. We hereby deny Short on Cash's motion for oral argument.

2. Indiana Code Section 24–4.5–7–409 provides that: "The department may sue: (a) to enjoin any conduct that constitutes or will constitute a violation of this chapter; and (b) for other equitable relief."

on Cash to "cease and desist from making payday or small loans under the guise of Internet service contracts until it is licensed by the [Department.]" Appellant's App. at 8. In so doing, the trial court made the following well-reasoned findings:

16. [Short on Cash's] fees for purported Internet access are $20 per $100 rebate, payable every two weeks. Internet service from true Internet Service Providers range from $9.95 to $23.95 per month.

17. [Short on Cash] uses the sale of Internet membership service to disguise its actual operation as a payday or small loan business.

\* \* \* \* \*

19. Ind.Code 24–4.5–7–102(1)(c) and 410(f) prohibits [sic] disguised loans or loan subterfuges.

20. Although required by Ind.Code 24–4.5–7–405,[3] [Short on Cash] has not obtained a written opinion from the Director of the [Department] for permission to operate a small loan business; [Short on Cash's] standard contract violates Ind.Code 24–4.5–7–410.

21. The Small Loan Statute, Ind.Code 24–4.5–7–201(3)[4] limits the total amount of finance charges to 10% for the first $100 and no more than $35.00 for each loan in excess of that amount and less than $401.

\* \* \* \* \*

24. Ind.Code 24–4.5–7–4.9(5) grants the Director the right of injunction against violations of the Small Loan statute.

\* \* \* \* \*

26. Where an action to be enjoined is unlawful, the unlawful act constitutes per se "irreparable harm" for the purposes of preliminary injunction analysis.

Appellant's App. at 6–7. This appeal by Short on Cash ensued.

**Discussion and Decision**

On appeal, Short on Cash argues that the trial court's grant of the preliminary injunction at issue constituted an abuse of discretion. The grant or denial of a request for a preliminary injunction rests within the sound discretion of the trial court, and our review is limited to whether there was a clear abuse of that discretion. *Ind. Family & Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 161 (Ind.2002). When determining whether to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. *Barlow v. Sipes*, 744 N.E.2d 1, 5 (Ind.Ct.App.2001)

---

3. Indiana Code Section 24–4.5–7–405 provides that:
   (1) This section does not apply to a business that is licensed by the department for a purpose other than consumer loans.
   (2) A lender shall not conduct the business of making small loans under this chapter within an office, suite, room, or place of business where another business is solicited or engaged unless the lender obtains a written opinion from the director of the department that the other business would not be contrary to the best interests of consumers.

4. Indiana Code Section 24–4.5–7–201 provides that:
   (1) Finance charges on the first one hundred dollars ($100) of a small loan are limited to fifteen percent (15%) of the principal.
   (2) Finance charges on the amount of a small loan greater than one hundred dollars ($100) are limited to ten percent (10%) of the amount over one hundred dollars ($100).
   (3) The total amount of finance charges may not exceed thirty-five dollars ($35).

(citing Ind. Trial Rule 52(A)), *trans. denied.* When findings and conclusions are made, we must determine if the trial court's findings support the judgment. *Id.* We will reverse the trial court's judgment only when it is clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *CSX Transp., Inc. v. Rabold,* 691 N.E.2d 1275, 1277 (Ind.Ct. App.1998), *trans. denied.* We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. *Barlow,* 744 N.E.2d at 5. Moreover, "[t]he power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor." *Id.*

■ To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that:

(1) [movant's] remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action;

(2) it had at least a reasonable likelihood of success at trial by establishing a prima facie case;

(3) its threatened injury outweighed the potential harm to appellant resulting from the granting of an injunction; and

(4) the public interest would not be disserved.

*Robert's Hair Designers, Inc. v. Pearson,* 780 N.E.2d 858, 863 (Ind.Ct.App.2002) (*quoting Walgreen,* 769 N.E.2d at 161). The movant must prove each of these requirements to obtain the preliminary injunction. *Pearson,* 780 N.E.2d at 863.

■ In the present case, Short on Cash contends that the trial court abused its discretion when it granted the preliminary injunction because Appellees failed to establish one of the elements necessary to obtain a preliminary injunction, i.e., irreparable harm. However, where the action to be enjoined is unlawful, the unlawful act constitutes *per se* "irreparable harm" for purposes of the preliminary injunction analysis. *Ferrell v. Dunescape Beach Club Condominiums Phase I, Inc.,* 751 N.E.2d 702, 713 (Ind.Ct.App.2001). When the *per se* rule is invoked, the trial court has determined that the defendant's actions have violated a statute and, thus, that the public interest is so great that the injunction should issue regardless of whether the plaintiff has actually incurred irreparable harm or whether the plaintiff will suffer greater injury than the defendant. *See* BLACK'S LAW DICTIONARY 1162 (7th ed.1999) (*per se* means of, in, or by itself). Accordingly, invocation of the *per se* rule is only proper when it is clear that a statute has been violated.

Short on Cash maintains that the trial court's finding that Short on Cash's sale of Internet service is merely a guise for its operation as a small loan business is clearly erroneous. As such, Short on Cash's argument continues, the trial court abused its discretion by determining that the company violated Indiana Code Section 24–4.5–7–410 and invoking the *per se* rule applicable to preliminary injunctions. Short on Cash also asserts that the trial court abused its discretion by enjoining the company's Internet business endeavors in the absence of a finding of irreparable harm. Accordingly, to determine whether the trial court abused its discretion by granting the preliminary injunction at issue, we must first determine whether

Short on Cash violated Indiana Code Section 24–4.5–7–410.

The question before us, which appears to be one of first impression, requires us to determine whether a company's policy of extending to its customers an immediate cash "rebate," as well as Internet service, in exchange for a one-year commitment to make bi-weekly payments in an amount equal to five times the amount of the rebate,[5] is tantamount to the operation of a small loan business in violation of Indiana's usury laws. The Uniform Consumer Credit Code—Small Loans, i.e., specifically Indiana Code Section 24–4.5–7–102, provides, in relevant part, that:

(1) Except as otherwise provided, all provisions of this article applying to consumer loans apply to small loans, as defined in this chapter.

(2) This chapter applies to:

\* \* \* \* \*

(c) a person, if the department determines that a transaction is:

(i) in substance a disguised loan; or

(ii) the application of subterfuge for the purpose of avoiding this chapter.

See also Ind.Code § 24–4.5–7–101. Indiana Code Section 24–4.5–3–106 defines "loan" as "the creation of debt by a credit to an account with the lender upon which the debtor is entitled to draw immediately" or "the creation of debt pursuant to a lender credit card or similar arrangement." Further, Indiana Code Section 24–4.5–7–410 prohibits, in relevant part, a lender making small loans from:

(f) Using a device or agreement that would have the effect of charging or

collecting more fees, charges, or interest than allowed by this chapter, including, but not limited to:

(i) entering a different type of transaction with the consumer;

(ii) entering into a sales/leaseback arrangement;

(iii) catalog sales; or

(iv) entering any other transaction with the consumer that is designed to evade the applicability of this chapter.

■ Short on Cash argues that, because it is not a small loan business, Indiana's usury statutes do not apply to its business operations. We agree that Short on Cash's business operations do not squarely fit within the purview of the statutory schemes governing Indiana's usury laws. Moreover, we note that the language of Indiana Code Sections 24–4.5–7–102 and 24–4.5–7–410 has never been interpreted or construed by our courts. Where a statute has not previously been construed, the express language of the statute controls the interpretation and the rules of statutory construction apply. Livingston v. Fast Cash USA, Inc., 753 N.E.2d 572, 575 (Ind. 2001). We are required to determine and effect the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. Id. In so doing, we should consider the objects and purposes of the statute as well as the effects and repercussions of such an interpretation. Id.

Here, as evidenced by its petition for preliminary injunction, the Department determined that Short on Cash's "rebate" is

---

**5.** A Short on Cash customer receives one hundred dollars as a "rebate" for opening a one-year Internet account with the company. Pursuant to the contract, the customer is then obligated to make bi-weekly payments of twenty dollars for the twelve-month contractual period. Thus, over the course of the contractual period, the customer is required to pay the aggregate amount of $520.00—i.e., twenty-six payments of twenty dollars each—to Short on Cash for Internet service.

in substance a disguised loan or the application of subterfuge for the purposes of avoiding Indiana Code Section 24–4.5–3. As such, pursuant to the plain and unambiguous language of Indiana Code Section 24–4.5–7–102, Indiana Code Section 24–4.5–7–410 applies to the controversy at issue.[6]

Having determined that Indiana Code Section 24–4.5–7–410 governs Short on Cash's business operations, we now examine whether the "rebate" at issue is actually a disguise for a consumer loan. In so doing, we observe that Black's Law Dictionary defines "rebate" as "[a] return of part of a payment, serving as a discount or reduction." BLACK'S LAW DICTIONARY 1273 (7th ed.1999). However, customers that open an account with Short on Cash for Internet service automatically receive a cash "rebate" of one hundred dollars per Internet account opened. A payment of twenty dollars is not due from the Short on Cash customer until two weeks after the account was opened and the rebate was received. A Short on Cash customer is thereafter obligated to make bi-weekly payments of twenty dollars for the duration of the one-year Internet contract. Should the customer terminate the contract prior to the expiration of the one-year period, he or she is obligated to repay the one-hundred-dollar rebate, plus any accrued twenty-dollar installments. In addition, the evidence demonstrates that Short on Cash does not limit its customers to one Internet account; rather, customers may open as many accounts as they desire.

Other than the immediate benefit of receiving the one hundred dollar rebate *per account opened,* we can glean no legitimate reason for a customer to purchase more than one Internet account. Rather, by purchasing multiple accounts, the customer merely obligates himself or herself to make biweekly payments of twenty dollars *on each account*—i.e., a customer with two active accounts must pay forty dollars to Short on Cash biweekly and a customer with three active accounts must make biweekly payments of sixty dollars for Internet service, and so on.

The record also reveals that, although Short on Cash purports to be an Internet service provider, it does not advertise its Internet services and has only one computer available for limited use by its customers, i.e., one hour of access per two-week period, at its business location. The evidence further demonstrates that only twenty-five of Short on Cash's 100 to 120 customers access the Internet from their home computers. Thus, the other seventy-five to ninety-five customers make biweekly payments of twenty dollars for, at most, one hour of Internet use every two weeks. Whereas, Petitioner's Ex. 3 reveals that six other competitive Internet service providers, including, NetZero, AOL, Earthlink, MSN, AT & T and SBC Yahoo, offer Internet service to their customers at a price ranging from $9.95 to $23.90 per month.

Lastly, the evidence shows that Short on Cash is located in the same building, uses the same phone number, and has the same

---

**6.** Indiana Code Section 24–4.5–7–104 defines "small loan" as a loan:
  (a) with a principal loan amount that is more than fifty dollars ($50) and less than four hundred one dollars ($401); and
  (b) in which the lender holds the borrower's check under an agreement, either express or implied, for a specific period before the lender:

  (i) offers the check for deposit or presentment; or
  (ii) seeks authorization to transfer or withdraw funds from the borrower's account. This definition does not encompass the character of the "rebate" at issue because Short on Cash does not hold the customer's check for a specified period of time.

principal and president as a small loan business known as Short on Ca$h. Short on Ca$h offered small loans to consumers "with contractual provisions for a single payment due approximately two weeks after the loan was made." Petitioner's Ex. 7. This evidence supports the trial court's finding that Short on Cash's sale of Internet service is merely a guise for its operation as a small loan business. Thus, Short on Cash, which operates without a usury license, is in violation of Indiana Code Section 24–4.5–7–410.[7] Accordingly, the trial court did not err when it invoked the *per se* rule in this case and, therefore, did not abuse its discretion when it granted the preliminary injunction in favor of Appellees in the absence of a showing of irreparable harm.

For the foregoing reasons, we affirm the trial court's grant of a preliminary injunction. Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.

---

7. Moreover, by charging biweekly payments of twenty dollars for the contractual period, in exchange for the one hundred dollar rebate, Short on Cash receives finance charges or profits in the amount of 20% of the principal or rebate, at a minimum, and 420%, at a maximum,—i.e., $520 minus $100 equals $420 divided by 100 equals 420%—per account. These excessive finance charges are in violation of Indiana Code Section 24–4.5–7–201.