CLAY TOWNSHIP OF HAMILTON COUNTY Indiana, by Judith F. HAGAN, Clay Township Trustee, Appellant–Plaintiff,

v.

CLAY TOWNSHIP REGIONAL WASTE DISTRICT, Appellee–Defendant.

No. 29A04–0502–CV–85.

Court of Appeals of Indiana.

Dec. 8, 2005.

David E. Wright, William Bock, III, Kroger, Gardis & Regas, LLP, Indianapolis, for Appellant.

Anne Hensley Poindexter, Amy E. Higdon, Campbell Kyle Proffitt, LLP, Carmel, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Clay Township of Hamilton County, Indiana ("Clay Township"), by Judith F. Hagan, Clay Township Trustee, appeals the denial of its motion for preliminary injunction against Clay Township Regional Waste District ("the District"). We reverse.[1]

### Issue

The dispositive issue is whether the trial court abused its discretion in denying Clay Township's motion for preliminary injunction.

### Facts and Procedural History

In February 1975, the Clay Township Trustee filed a petition with the Indiana Stream Pollution Control Board ("ISPCB," predecessor to the Indiana Department of Environmental Management, or "IDEM"), requesting an order establishing a regional waste district in Clay Township. The stated purpose of the District was to "provide for the collection, treatment and disposal of sewage within and without the District." Appellant's App. at 196. The Clay Township Trustee recommended that the

manner of selection, number and term of the [District's] Board of Trustees [ ("Board") be] as follows: · . . .

(1) Four (4) members appointed by the Clay Township Trustee, Hamilton County, Indiana, and his Advisory Board;

(2) One (1) member appointed by the Board of Commissioners of Hamilton County, Indiana;

(3) One (1) member appointed by the County Council of Hamilton County, Indiana; and

(4) One (1) member appointed by the Board of Trustees of the Town of Carmel, Indiana, or by the Mayor of the City of Carmel, Indiana, as the case may be[,]

for a total of seven members who, with the exception of the initial Board, would serve four-year terms. *Id.* at 197–98. In June 1975, ISPCB's technical secretary issued a final order approving the petition and "organiz[ing]" the District "as an independent political entity of the State of Indiana." *Id.* at 193. That order is also known as the District's organizational plan or charter.

In 1991, the District "completed a sewage works project in southeastern Boone County" and began "rendering sewage disposal service to customers in southeastern Boone County." *Id.* at 202. In July 1991, the District filed a petition with IDEM requesting that the organizational plan be modified to provide for a nine-member Board to be appointed thusly:

(a) five members appointed by the Clay Township Trustee, Hamilton County, Indiana, with the concurrence of the Clay Township Board; (b) one member appointed by the Board of Commissioners of Hamilton County, Indiana; (c) one member appointed by the County Council of Hamilton County, Indiana; (d) one member appointed by the Board of Commissioners of Boone County, Indiana; (e) one member appointed by the Mayor of the City of Carmel, Indiana.

*Id.* at 203. After an administrative hearing on the petition, an administrative law judge issued findings and an order recommending the approval of the proposed modification of the organizational plan. On February 3, 1992, IDEM's commission-

---

1. We hereby deny Clay Township's motion for oral argument.

er issued an order adopting the recommended findings and order.

On December 20, 2004, Clay Township Trustee Hagan met with District Board President Henry Blackwell, whose term was due to expire on December 31, 2004. Hagan told Blackwell that she would not reappoint him to the Board because of his opposition to a proposal to merge the District with the City of Carmel's sewage treatment operations. At a meeting on December 27, 2004, the Board adopted a resolution that reads in relevant part:

WHEREAS, the Town of Zionsville has previously requested representation on the [Board]; and

WHEREAS, the Boone County Commissioners have now requested additional Boone County representation by way of an appointment from the Boone County Council to the [Board]; and

WHEREAS, the majority of the District's customers presently are within Hamilton County, however, a significant portion of the District's assets, including the Michigan Road treatment plant, are located physically within Boone County; and

WHEREAS, the Boone County Commissioners were previously given one (1) appointment based upon the location of the District's Michigan Road Treatment plant, and two (2) grants of territory from Boone County; and

WHEREAS, since that time the Boone County Commissioners have made multiple additional grants of territory to the District; and

WHEREAS, both the Town of Zionsville and the Boone County Commissioners have expressed a willingness to grant further additional territory to the [Board], if they have additional representation thereon; and

WHEREAS, the [Board] has previously expressed its intention to remain an independent regional sewer district.

WHEREAS, the [Board] have [sic] reviewed the requests from the Town of Zionsville and the Boone County Commissioners for additional representation on the [Board], and have also reviewed the current distribution of appointments to the [Board] and have determined it would be in the best interest of the District for the appointments to be reallocated as follows:

NOW, THEREFORE, BE IT RESOLVED BY THE [BOARD]:

(1) The Hamilton County Commissioners shall have one (1) additional appointment, which appointment was previously allocated to the Clay Township Trustee with a term expiration of December 31, 2004.

(2) The Boone County Council shall also receive an appointment, which appointment was previously allocated to the Clay Township Trustee, said appointment will be for the term ending December 31, 2007 (which position was recently vacated by the resignation of Charles E. Shalliol).

(3) The Town of Zionsville shall receive an appointment, which appointment was previously allocated to the Clay Township Trustee, said appointment shall be the next available appointment due to expiration of term, resignation of or inability to serve or otherwise by any current Trustee appointment. However, the latest the Town of Zionsville will receive the appointment, will be upon completion of the current appointee's term for the term ending December 31, 2005.

*Id.* at 206–07.

On December 30, 2004, Clay Township filed a complaint against the District requesting preliminary and permanent in-

junctive relief from the Board's resolution and any actions taken thereunder. Clay Township alleged, *inter alia*, that the Board's "purported alteration in the appointing authority of the Township is an attempted unlawful modification" of the District's organizational plan. *Id.* at 369. On that date, the trial court held a hearing on Clay Township's petition for temporary restraining order.[2] On January 6, 2005, Clay Township filed an amendment to its complaint. Also on that date, the trial court conducted a hearing on Clay Township's motion for preliminary injunction. *See* Tr. at 37 (title page of hearing transcript).

On February 4, 2005, the trial court entered the following order:

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER ON PRELIMINARY INJUNCTION

. . . .

### FINDINGS OF FACT

. . . .

9. On December 27, 2004, the District Board held a special meeting at which time a Resolution was adopted that modified the composition of the Board of Trustees. The Resolution reassigned three (3) appointments formerly made by the Clay Township Trustee as follows: one (1) appointment to the County Commissioners of Hamilton County, one (1) appointment to Boone County Council, and one (1) appointment to the Town of Zionsville.

10. Plaintiff requests that the Court issue a *Permanent* Injunction enjoining the Defendant Clay Township Regional Waste District and the Defendant's Officers, Agents, Servants, Employees and its Attorneys and all persons in active participation with them or any of them, directly or indirectly: 1) enforcing or acting under any authority of the Resolution; 2) taking any action to reassign or reallocate Clay Township's five (5) appointments to the District Board; 3) prohibiting or interfering with the normal and customary participation of the five (5) appointees of the Township.

11. The relevant statutes that have been brought to the Court's attention by counsel for each party are:

A. I.C. 13–26–1–2(a) which provides "[A]nytime after the creation of a District, the District, after motion by the District's Board, may file a petition with the department requesting the approval of the department permitting the District to: (1) increase or add to the District's purposes or modify the District Plan approved by the department[.]"

B. I.C. 13–26–4–3 which provides "Instead of electing the board, an order establishing a district may provide for appointments to the board by the elected executive or legislative officers of the eligible entities having territory in the district."

C. I.C. 13–26–5–3 which provides "(a) The board may by rules and resolutions provide the following: (1) the procedure for the board's actions; (2) The manner of selection of the board's president, treasurer, and secretary and other officers or employees of the district, including

---

**2.** The chronological case summary indicates that the trial court entered an amended temporary restraining order on January 6, 2005, but it is silent as to the entry of an original order. Appellant's App. at 2. Neither order appears in the record before us.

the titles, terms of office, compensation, duties, number, and qualifications; (3) Any other lawful subject necessary to the operation of the district and the exercise of the power granted."

D. I.C. 13–[26]–5–4 which provides "(a) The Board may adopt and enforce rules for the following purposes: (1) to accomplish the purpose of the District; (2) to protect the works, improvements, and properties, both real and personal, that the District owns; (b) The Board may adopt and enforce rules under subsection (a) that are necessary and advisable to do the following: (1) Protect and preserve the works, improvements, and properties owned or controlled by the District, prescribe the manner of use by any person, and preserve order in and adjacent to the works.

12. During both the argument and evidentiary phase of the *Permanent* Injunction hearing, Plaintiff indicated that the Defendant's actions were contrary to I.C. 13–26–1–2 because the Waste District's Resolution of December 27, 2004 *modified* the District Plan and was not approved by the Indiana Department of Environmental Management. Lynn Newlin,[3] a witness from the Indiana Department of Environmental Management testified that "IDEM" would not consider or act on a request by a Waste District wherein the sole issue of modification was the reallocation of appointments to the Waste District's Board. According to her testimony, "IDEM" had not been granted legal authority to take such an action under the relevant statutes. Ms. Newlin from "IDEM" acknowledged that the relevant statutes were silent on the reallocation of appointments, that "IDEM" had no legal duty or authority to enforce any relevant statutes on the sole issue of reallocation of appointments for any particular Waste District.

13. The Plaintiff goes on to indicate that the December 27, 2004 Resolution reduces the appointment authority of the Township from fifty-six percent (56%) of the members to twenty-two percent (22%) of the members. The Township has ninety-two percent (92%) of the rate payers for the Waste District, yet it only has a twenty-two percent (22%) representation on the Board.

14. The Plaintiff indicates that if "IDEM's" interpretation of the statutes is correct and that the Waste District has the authority to reallocate membership to its Board, that that interpretation ... misinterprets relevant statutes and it appears to be a case of first impression with regard to the issue of reallocation of appointing authority under the relevant statutes.

15. The Defendant, in its argument and proposed Findings, relied on I.C. [13–26–5–4], which provides in part that the District Board has broad authority to [adopt] and enforce rules in order to protect the works, improvements, properties and assets of the District. The Defendant went further to say that there was a proposed merger between the Waste District and the City of Carmel in which all of the Waste District's property would be transferred to the City of Carmel. This merger did grant a rate reduction for the customers of the Waste District living in the City of Carmel. The

---

**3.** Newlin's name is spelled "Lynn Newland" in the hearing transcript and "Lynne Newlon" in IDEM correspondence. Tr. at 66; Appellee's App. at 9.

Defendant further commented that this did not provide any benefit for the District's other rate payers. The testimony presented at the hearing, was that the Township Trustee was in favor of the merger and the consolidation of the Clay Township Regional Waste District with the City of Carmel. The Waste District referred to I.C. 13–26–4–3, which states a District may provide for appointments to the Board by the elected executive or legislative officers of the eligible entities having territory in the District [sic [4]]. The Waste District pointed out that the City of Zionsville and Boone County were serviced by the District, their pipelines were located in Boone County and Zionsville, and the affluent [sic [5]] facility was located in Boone County. A significant amount of the District's assets are in Boone County and Zionsville, making it an eligible entity for representation on the Board. As indicated earlier in I.C. 13–26–5–4, the board may adopt and enforce rules under subsection (a) that are necessary and advisable to do the following: (1) protect and preserve the works, improvements, and properties owned or controlled by the District[,] prescribe the manner and use [by] any person, and preserve order in and adjacent to the works.

16. The Court, in reviewing the determination by the Indiana Stream Pollution Control Board establishing the Clay Township Regional Waste District on June 3, 1975 notes that the District to be known as the "Clay Township Regional Waste District organized as [an] independent political entity of the State of Indiana". In *IDEM v. Jennings Northwest Regional Utilities and Board of Trustees of Jennings Northwest Regional Utilities,* 760 N.E.2nd 184 at p. 189, the Court noted that the utility was organized as a separate, independent, political entity and went on to say "limitation on the utilities [sic] independence is unquestionably prejudicial..." "a Judgment in favor of the utility would substantially eliminate ....the prejudice because it would serve to recognize utility status as a municipal corporation independent of the County Commissioner's control...".

17. In reviewing the above case, the statutes, combined with the testimony presented to the Court at the hearing for a *Permanent* Injunction, the Court finds the Clay Township Regional Waste District is an independent political entity of the State of Indiana. The Resolution of December 27, 2004 recognized that the Waste District was now serving, not only Hamilton County, Clay Township, and the City of Carmel, but the City of Zionsville and Boone County. The Resolution for the reallocation of the Board arguably could have been done to protect, preserve, the works and improvements and properties owned and controlled by the District. Based upon these above Findings, the Court is

---

**4.** Clay Township notes that Indiana Code Section 13–26–4–3 actually states, "Instead of electing the board, an order establishing a district may provide for appointments to the board by the elected executive or legislative officers of the eligible entities having territory in the district." The statute is quoted correctly in finding 11B.

**5.** We suspect that the trial court intended to use the term "effluent," i.e., "[l]iquid waste that is discharged into a river, lake, or other body of water." BLACK'S LAW DICTIONARY 555 (8th ed.2004).

DENYING the Request for *Permanent* Injunction.

Appellant's App. at 4–11 (emphases added).

Notwithstanding the italicized language, both the caption of the order and the chronological case summary ("CCS") indicate that the order addresses Clay Township's motion for preliminary injunction. *See* Appellant's App. at 2–3 (CCS entries for February 4 and 14, 2005, mentioning order on preliminary injunction); Ind. Trial Rule 77(B) ("Notation of judicial events [in CCS] shall set forth the date of the event and briefly define any documents, orders, rulings, or judgments filed or entered in the case."); *see also* Tr. at 37 (title page of "transcript of evidentiary hearing on preliminary injunction") (capitalization altered). We can only presume that "Permanent" is a scrivener's error, and therefore we review the trial court's order as a denial of Clay Township's motion for preliminary injunction.[6]

### Discussion and Decision

 Our standard of review is well settled:

> The grant or denial of a preliminary injunction is within the sound discretion of the trial court, and the scope of appellate review is limited to deciding whether there has been a clear abuse of discretion. When determining whether or not to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. When findings and conclusions are made, the reviewing court must determine if the trial court's findings support the judgment. The trial court's judgment will be reversed only when clearly erroneous. Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment.
>
> The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor. To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: 1) its remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; 2) it has at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) its threatened injury outweighs the potential harm resulting from the granting of an injunction; and 4) the public interest would not be disserved.

*Bigley v. MSD of Wayne Twp. Sch.,* 823 N.E.2d 278, 281–82 (Ind.Ct.App.2004) (citations omitted), *trans. denied* (2005). "[W]hile we defer substantially to the trial court's findings of fact, we evaluate questions of law de novo." *PrimeCare Home Health v. Angels of Mercy Home Health Care, LLC,* 824 N.E.2d 376, 380 (Ind.Ct. App.2005).

 Additionally, we note that

---

**6.** Consequently, we need not address Clay Township's argument that the trial court prematurely ruled on its motion for permanent injunction in contravention of Indiana Trial Rule 65(A). *See* Ind. Trial Rule 65(A)(2) ("Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."). There is no indication that such an order was issued in this case.

where the action to be enjoined is unlawful, the unlawful act constitutes *per se* irreparable harm for purposes of the preliminary injunction analysis. When the *per se* rule is invoked, the trial court has determined that the defendant's actions have violated a statute and, thus, that the public interest is so great that the injunction should issue regardless of whether the plaintiff has actually incurred irreparable harm or whether the plaintiff will suffer greater injury than the defendant. Accordingly, invocation of the *per se* rule is only proper when it is clear that a statute has been violated. *Short On Cash.Net of New Castle, Inc. v. Dep't of Fin. Insts.*, 811 N.E.2d 819, 823 (Ind.Ct.App.2004) (citations and quotation marks omitted); *see also L.E. Servs., Inc. v. State Lottery Comm'n of Indiana*, 646 N.E.2d 334, 349 (Ind.Ct.App.1995) ("[W]hen the acts sought to be enjoined are unlawful, the plaintiff need not make a showing of irreparable harm or a balance of the hardship in its favor."), *trans. denied*.

Clay Township asserts that the Board's resolution reallocating the appointment of its members "is in direct conflict with the Indiana Code provisions pertaining to regional waste districts which grant exclusive authority to the Commissioner of IDEM to issue the charter under which such districts operate." Appellant's Br. at 8. More specifically, Clay Township contends that the charter "can only be modified by IDEM in compliance with strict statutory requirements and cannot be amended by unilateral action of the Board[.]" *Id.* We interpret Clay Township's argument as an invocation of the *per se* rule and therefore address whether the Board's resolution is contrary to statute.

We begin with an overview of the relevant statutory framework. Indiana Code Section 13–26–1–1 provides:

Any area may be established as a regional water, sewage, or solid waste district under this article for one (1) or more of the following purposes:

(1) To provide a water supply for domestic, industrial, and public use to users inside and outside the district.

(2) To provide for the collection, treatment, and disposal of sewage inside and outside the district.

(3) To provide for the collection, treatment, and disposal of solid waste and refuse inside and outside the district.

"The establishment of a regional district may be initiated only by a petition filed with [IDEM]." Ind.Code § 13–26–2–1. "The petition may be filed by any representative of one (1) or more eligible entities involved after being authorized by the fiscal body of the petitioning eligible entity or entities included in the plan of the proposed district." Ind.Code § 13–26–2–2. An "eligible entity" may be "a county, city, town, township, conservancy district, or other municipal corporation." Ind.Code § 13–11–2–62. The petition must state "[t]he purpose to be accomplished[,]" as well as "[t]he petitioner's recommendations on: (A) the manner of selection; (B) the number; and (C) the term, not exceeding four years; of the members of the board of trustees." Ind.Code § 13–26–2–3(3)(B), -(5). A board may consist of three, five, seven, nine, eleven, or thirteen trustees. Ind.Code § 13–26–4–1.

Upon determining that the petition is sufficient, the IDEM commissioner must appoint a hearing officer. *See* Ind.Code § 13–26–2–5. Indiana Code Section 13–26–2–6 states the notice requirements for a hearing on the petition. After the hearing, the hearing officer must enter findings and recommendations as to whether the petition should be approved, approved with modifications, or denied, and whether a

district should be established. Ind.Code § 13–26–2–8(a). "If the recommendation is in the affirmative, the recommendation must also include recommendations on: (1) the manner of the selection or appointment; (2) the number; and (3) the terms; of the board." Ind.Code § 13–26–2–8(b).

 If certain requirements are met, then the IDEM commissioner "shall issue an order directing that the district be established as an independent municipal corporation with a name and for the purposes designated in the order." Ind.Code § 13–26–2–10(a).[7] The order must "[p]rovide for the selection or appointment and terms of offices, not to exceed four (4) years, of the board." Ind.Code § 13–26–2–10(b)(1).[8] "An order establishing a district may provide for the board to be elected by the voters in the district[.]" Ind.Code § 13–26–4–2. In the alternative, "an order establishing a district may provide for appointments to the board by the elected executive or legislative officers of the eligible entities having territory in the district." Ind.Code § 13–26–4–3.[9]

Indiana Code Section 13–26–5–1 provides that upon the qualification of the board and the election of its president, treasurer, and secretary, a district "may exercise in [its] own name, as a municipal corporation, all the rights, powers, and duties conferred upon the district by this article." Indiana Code Section 13–26–5–2 enumerates twenty-three such powers, including that of merging with another district. Ind.Code § 13–26–5–2(14). Along the same lines, Indiana Code Section 13–26–5–3(a) states:

> The board may by rules and resolutions provide the following:
>
> (1) The procedure for the board's actions.
>
> (2) The manner of selection of the board's president, treasurer, and secretary and other officers or employees of the district, including the titles, terms of office, compensation, duties, number, and qualifications.
>
> (3) Any other lawful subject necessary to the operation of the district and the exercise of the power granted.

Finally, Indiana Code Section 13–26–5–4 states:

> (a) The board may adopt and enforce rules for the following purposes:

---

7. An order establishing a district is subject to judicial review under the Administrative Orders and Procedures Act. Ind.Code § 13–26–2–11 (citing Ind.Code 4–21.5–5).

8. The District argues that "there is no language in [Indiana Code Section 13–26–2–10] that states that IDEM must allocate who is responsible for the appointments." Appellee's Br. at 16. We agree with Clay Township that "if it is not the Commissioner of IDEM who makes the final determination of the manner by which trustees are appointed then a regional waste district board could never hold its initial meeting because no one would ever know who the members of the board are. There is simply no other process by which the appointing authorities for trustees can be established other than through the Commissioner's foundational order." Appellant's Reply Br. at 4–5. The same may be said for an

order on a district's petition to "increase the number of persons serving on the board of trustees" pursuant to Indiana Code Section 13–26–1–2(a). The final authority for the appointment of the additional trustees clearly rests with IDEM. *See* Ind.Code § 13–26–1–2(b) ("[IDEM] may: (1) approve; (2) modify and approve; or (3) reject; a request received under this section.").

9. Indiana Code Section 13–26–4–5 states that if a district's plan "contemplates that sewage treatment for the district will be provided in cooperation with a municipality," then the order must provide for the appointment of at least one trustee by the municipality's executive and of at least one trustee each by the fiscal body and the executive "of the county having the largest amount of territory in the district."

(1) To accomplish the purpose of a district.

(2) To protect the works, improvements, and properties, both real and personal, that the district owns.

(3) To secure the best results from the construction, operation, and maintenance of works, improvements, and properties.

(4) To prevent damage by the misuse of the works, improvements, or properties by:

(A) the pollution or misuse of the waters in the district or of the sewerage system; or

(B) the improper disposal of solid waste.

(b) The board may adopt and enforce rules under subsection (a) that are necessary and advisable to do the following:

(1) Protect and preserve the works, improvements, and properties owned or controlled by the district, prescribe the manner of use by any person, and preserve order in and adjacent to the works.

(2) Prescribe the manner:

(A) in which ditches, sewers, pipelines, or other works should be adjusted to or connected with the works of the district; and

(B) of waste disposal in the district.

(3) Prescribe the permissible uses of the water supply and the manner of distribution and prevent the pollution or unnecessary waste of the water supply.

(4) Prohibit or regulate the discharge into the sewers of the district of liquid or solid waste detrimental to the works and improvements.

(c) Rules must be:

(1) consistent with:

(A) statutes; and

(B) the rules of the solid waste management board or the water pollution control board; and

(2) maintained and open to inspection in the office of the district.

(d) The board may enforce by injunction or other legal remedy rules adopted under this section. The board may remove a harmful or improper construction or obstruction or may close an opening or connection made improperly or in violation of the rules. A person that willfully fails to comply with the rules is liable for damage caused by the failure and for the cost of restoring or replacing construction damaged.

 In denying Clay Township's motion for preliminary injunction, the trial court relied primarily on Indiana Code Sections 13–26–5–3 and –4. The court characterized the Board's powers under Indiana Code Section 13–26–5–4 as "broad" and stated that the resolution "for the reallocation of the Board arguably could have been done to [protect and preserve] the works and improvements and properties owned and controlled by the District" in the face of a proposed merger with Carmel's sewage treatment operations. Appellant's App. at 9–11. We disagree.

 We first observe that a municipal corporation, such as the District, "is an instrumentality of the State and possesses only those powers expressly granted by statute. Any implied power must be indispensable to the attainment of the declared objects and purposes of the corporation." *Health & Hosp. Corp. of Marion County v. Marion County*, 470 N.E.2d 1348, 1355 (Ind.Ct.App.1984) (citation, emphases, and quotation marks omitted), *trans. denied* (1985); *see also City of Gary v. Indiana Bell Tel. Co.*, 732 N.E.2d 149, 155 n. 3 (Ind.2000) ("In contrast to the City of Gary's numerous unspecified powers as a

local governing unit under the Home Rule Act [Ind.Code §§ 36–1–3–1 to –9], the Indianapolis Airport Authority's powers as a municipal corporation are limited to those expressly identified in its enabling statute."). We further observe that

> [t]he interpretation of a statute by a trial court is a question of law to which this Court owes no deference. The foremost objective in statutory interpretation is to determine and effect the legislative intent, giving words and phrases their plain, ordinary and usual meaning unless a different purpose is manifested by the statute. Statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme. Moreover, we will reject an interpretation of a statute that produces an absurd result.

*In re 2002 Floyd County Tax Sale*, 813 N.E.2d 805, 807 (Ind.Ct.App.2004) (citations omitted).

■ We conclude that the trial court's interpretation of Indiana Code Sections 13–26–5–3 and –4 sweeps too broadly and produces the absurd result of allowing district boards to reallocate appointments whenever they perceive a threat to their turf or tenure.[10] There is no statute that specifically permits a district board to do so, and we find no implied power to do so in Indiana Code Sections 13–26–5–3 and –4.[11] "When certain items or words are specified or enumerated in a statute, then, by implication, other items or words not so specified or enumerated are excluded." *Lex, Inc. v. Bd. of Tr. of Town of Paragon*, 808 N.E.2d 104, 109 (Ind.Ct.App.2004), *trans. denied.* A plain reading of Indiana Code Section 13–26–5–3 indicates that the statute pertains only to internal administrative matters, not to the appointment of board members in the first instance. Indiana Code Section 13–26–5–4 does not mention reallocating board appointments, but instead authorizes a district to preserve and protect its physical assets and water supply.

We are therefore unpersuaded by the District's argument that its resolution was justified under Indiana Code Section 13–26–5–4 as a means of protecting its assets from being obtained, purportedly at no cost to Carmel, in the proposed merger supported by Clay Township Trustee Ha-

---

**10.** In *Indiana Department of Environmental Management v. Jennings Northwest Regional Utilities*, 760 N.E.2d 184 (Ind.Ct.App.2001), cited by the trial court, IDEM's order establishing a regional water and sewage district authorized the election of board trustees by the utility's consumers. Three years later, IDEM issued an amended order giving the county commissioners "the authority to designate the manner in which the Utility's board would be determined." *Id.* at 186. The utility sought judicial review of IDEM's order, and the trial court denied IDEM's motion to dismiss. We affirmed, stating that the amended order "eviscerate[d] the independence given to the Utility by placing the future of the Utility's leadership in the hands of County Commissioners. This limitation on the Utility's independence is unquestionably prejudicial and should have been considered by IDEM in the process of amending the

[original] order." *Id.* at 189 (footnote omitted). Here, the Board unilaterally amended IDEM's order to the detriment of Clay Township. As such, we find *Jennings* both factually and procedurally distinguishable from this case.

**11.** The District claims that district boards "regularly make 'modifications' of provisions of IDEM orders without IDEM's approval." Appellee's Br. at 20. As an example, the District observes that if a board approves an application for including additional territory within the district, Indiana Code Section 13–26–8–2 requires only that the district notify IDEM of the inclusion. In fact, this example undermines the District's argument, as the legislature specifically granted this authority pursuant to statute.

gan.[12] Reasonable minds may differ as to the wisdom of a particular merger, but we conclude that the relevant statutes do not permit a district's board to reshuffle itself to avoid (or facilitate) one.

■ As for the trial court's finding that IDEM "would not consider or act on a request" for a reallocation of board appointments because it "had not been granted legal authority to take such an action under the relevant statutes[,]" Appellant's App. at 8–9, "[i]t is a well-settled principle of law that an administrative agency, in addition to the express powers conferred by statute, also has such implicit power as is necessary to effectuate the regulatory scheme outlined by ... statute." *Barco Beverage Corp. v. Indiana Alcoholic Beverage Comm'n,* 595 N.E.2d 250, 254 (Ind. 1992). If district boards do not have the power to reallocate appointments, then IDEM must have the implicit power to do so.

■ We find it curious indeed that IDEM saw fit to exercise this implied power until recently, when its legal counsel interpreted the statutes otherwise. *See*

Tr. at 68 (testimony of IDEM's Lynn Newlin). "Law is the province of the judiciary, and courts rather than administrative agencies are charged with the responsibility to resolve questions of statutory construction." *Mance v. Bd. of Dir. of Pub. Employees' Ret. Fund,* 652 N.E.2d 532, 534 (Ind.Ct.App.1995), *trans. denied* (1996). "An interpretation given statutes or administrative rules and regulations by an agency charged with the duty of enforcing those statutes, rules or regulations is entitled to great weight. However, an agency's interpretation which is erroneous is entitled to no weight." *Partlow v. Indiana Family and Soc. Servs. Admin.,* 717 N.E.2d 1212, 1214 (Ind.Ct.App.1999) (citation omitted). IDEM's interpretation of the relevant statutes would produce the same absurd result with which we are faced today—a district board that is accountable only to itself. This cannot be the result the legislature intended. Just as a district board must petition IDEM to increase the number of its trustees, *see* Ind.Code § 13–26–1–2(a)(3), so must it petition IDEM to reallocate the appointment of its trustees.[13]

---

12. Mergers are addressed in Indiana Code Section 13–26–5–2(14), which provides that a district may,

> [u]pon consent of two-thirds (2/3) of the members of the board, merge or combine with another district into a single district on terms so that the surviving district: (A) is possessed of all rights, franchises, and authority of the constituent districts; and (B) is subject to all the liabilities, obligations, and duties of each of the constituent districts, with all rights of creditors of the constituent districts being preserved and unimpaired.

The details of Carmel's merger proposal are not in the record before us, but we observe that Indiana Code Section 13–26–5–2(14) offers some measure of protection to the merging districts' ratepayers, investors, and creditors alike. Clay Township points out that its five trustees could not have "unilaterally impose[d] their will in favor of a merger" on the

nine-member board. Appellant's Reply Br. at 11.

13. We must disagree, however, with Clay Township's contention that a hearing is required on a petition to reallocate board appointments. *See* Appellant's Br. at 14 (stating that "IDEM's charter establishing the District ... can only be amended by IDEM after the notice and hearing process set forth in the Indiana Code."). The statutory hearing requirements relate only to the establishment of a district. *See* Ind.Code § 13–26–2–6 (requiring hearing "on any matter for which a hearing is authorized under [Ind.Code 13–26–2,]" which is entitled "Establishment of Regional Districts"). A hearing is not required on a petition to "increase the number of persons serving on the board of trustees" filed under Indiana Code 13–26–1. *See* Ind.Code § 13–26–1–2. Likewise, we find no basis for requiring a hearing on a petition to reallocate board appointments.

In sum, the Board's resolution is contrary to statute. Accordingly, we need not determine whether Clay Township established irreparable harm or that it will suffer greater injury than the District. *See Short On Cash.Net,* 811 N.E.2d at 823. Having decided the statutory question in Clay Township's favor, we conclude that it has established a prima facie case and thereby demonstrated a reasonable likelihood of success at trial. *See Bigley,* 823 N.E.2d at 282. We also conclude that Clay Township met its burden of establishing that the public would not be disserved by enjoining the Board from reallocating its appointments. *See id.* As such, we conclude that the trial court abused its discretion in denying Clay Township's motion for preliminary injunction. We therefore reverse.

Reversed.

NAJAM, J., and BARNES, J., concur.