# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 01 2020, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Gregory A. Schrage
Victoria Howard
Church, Church, Hittle & Antrim
Noblesville, Indiana

ATTORNEYS FOR APPELLEES

Jack A. Tandy
Tandy Law, LLC
Shelbyville, Indiana

Stephen E. Schrumpf
Shelbyville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MGI Traffic Control Products, Inc., and Mark Bennett by guardian Steven Bennett, <br><br> *Appellants-Plaintiffs,* <br><br> v. <br><br> Michael Green and Mike Green, Incorporated, <br><br> *Appellees-Defendants.* | May 1, 2020 <br><br> Court of Appeals Case No. 19A-PL-2371 <br><br> Appeal from the Shelby Circuit Court <br><br> The Honorable Trent Meltzer, Judge <br><br> Trial Court Cause No. 73C01-1907-PL-31 |

**Mathias, Judge.**

MGI Traffic Control Products, Inc. ("MGI Traffic"), and Mark Bennet ("Mark") by guardian Steven Bennet ("Steven") (collectively "the Appellants") filed a request for a preliminary injunction in Shelby Circuit Court seeking to prohibit Michael Green and Mike Green, Inc. ("Green") from competing with MGI Traffic. The trial court denied the request, and the Appellants appeal, presenting three issues that we consolidate and restate as whether the trial court clearly erred in denying the Appellants' request for a preliminary injunction.

We affirm.

## Facts and Procedural History

Green incorporated Mike Green, Inc., in 1989 to sell and rent traffic control products and services. Green is the sole owner of Mike Green, Inc. The market for traffic control systems in Indiana is limited and generally consists of the Indiana Department of Transportation ("INDOT"), county and city officials in charge of road construction and maintenance, and private road construction contractors.

On December 3, 2008, Green and Mark entered into an Asset Purchase Agreement ("the Agreement"), in which they agreed to form a new corporation, MGI Traffic, with Mark owning 75% and Green owning 25% of the corporation. Green also agreed to sell the assets of Mark Green, Inc., to MGI Traffic, including "[a]ll customer lists, customer contracts, customer records, vendor lists, vendor contracts, telephone numbers, fax numbers, email addresses, websites, domain names and all goodwill[.]" Ex. Vol., Defendant's

Ex. B, p. 2. The Agreement contained a non-compete clause stating that Green could not compete with MGI Traffic for a period of three years from the date of the execution of the Agreement. The Agreement also provided that Mark had the option to buy Green's shares of MGI Traffic upon the termination of Green's employment with MGI Traffic.[1] MGI Traffic conducted the same type of business that Mike Green, Inc., had conducted, i.e., selling and renting traffic control products and services.

After execution of the Agreement, Green ran the day-to-day business of MGI Traffic, and Mark provided the corporation a line of credit for operating capital to help grow the business. Both parties were paid similar salaries by MGI Traffic.

Mark was in an accident in 2013 that left him in a coma for several weeks. He suffered traumatic brain injury as a result of the accident. One side of his body was paralyzed, he had to use a wheelchair, and he had problems with his short-term memory. Mark's brother Steven was eventually appointed as Mark's guardian, and Mark no longer actively participated in the business. Without consulting Green, Steven began to receive a $45,000 annual salary from MGI Traffic. When Green complained that Steven was receiving a substantial salary despite performing little work for the company, Steven stopped receiving a salary in his name; instead, he reinstituted a salary for Mark. Green became

---

[1] The same paragraph of the Agreement stated that the parties were to enter into a buy-sell agreement, but neither party introduced evidence of such an agreement.

dissatisfied with Steven's participation in MGI Traffic and told Steven as early as 2016 that he wanted to leave the company. Nevertheless, Green continued to work for MGI Traffic until early 2019.

[7] On April 4, 2019, Green sent Steven an email stating that he was resigning immediately as an employee and as a member of the board of directors of the company. He also proposed a plan to wind down the business. Specifically, Green offered to continue to fill orders from existing inventory and collect accounts receivable on behalf of MGI Traffic. Green also offered to train a replacement.

[8] Although Steven did not respond to Green's email, Green did as he had proposed and fulfilled incoming orders if the order could be fulfilled from MGI Traffic's existing inventory. He also collected accounts receivable for MGI Traffic. Incoming orders that could not be fulfilled from MGI Traffic's existing inventory, however, Green processed on behalf of Mike Green, Inc. Green also paid $31,219 to a vendor on behalf of MGI Traffic so that an MGI Traffic customer could receive an order that had been placed through MGI Traffic but which MGI Traffic would have been unable to fulfill. Green sent an invoice to MGI Traffic asking to be reimbursed for this amount, but the invoice was not paid. Since Green's departure, MGI Traffic has not solicited new business and has laid off all of its employees.

[9] On July 10, 2019, the Appellants filed a complaint against Green alleging breach of fiduciary duty as a shareholder and employee, tortious interference

with a business relationship, tortious interference with contract, constructive fraud, misappropriation of trade secrets, theft, and conversion. The Appellants also filed a motion seeking a preliminary injunction to prohibit Green from competing with MGI Traffic and from contacting or interacting with MGI Traffic's vendors and customers.

[10] The trial court held an evidentiary hearing on the request for a preliminary injunction on August 30, 2019. At the conclusion of the hearing, the trial court took the matter under advisement and permitted the parties to submit supplemental briefing. On September 3, 2019, before the trial court issued its ruling on the motion for a preliminary injunction, Green filed an answer and counterclaim requesting an accounting and an order requiring MGI Traffic to purchase Green's shares of the company.

[11] On September 17, 2019, the trial court denied the Appellants' request for a preliminary injunction and entered the following relevant findings of fact and conclusions of law:

> 6. At the earliest, the partnership dissolved upon the receiving of Green's email of April 4, 2019, and at the latest upon Green's complete termination from MGI Traffic on July 10, 2019.
>
> 7. The fact that Green still owns shares does not change the fact that he has withdrawn from or abandoned the partnership.
>
> 8. "To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that . . . the movant's remedies at law are inadequate." *Primecare Home Health v. Angels of Mercy Home Health Care, LLC*, 824 N.E.2d 376, 380 (Ind. Ct. App. 2005).

9. **Any damages resulting from Green's actions while he was still part of the enterprise can be compensated for with a money judgment.**

10. What constitutes a trade secret is a determination for the Court to make as a matter of law, where the threshold factors to be considered are the (1) extent to which the information is known by others and (2) the extent to which that information could be duplicated by legitimate means. *Id.* at 381.

11. There was scant evidence introduced that there is a vendor or customer list to begin with, and no such list was provided to the Court. There was no evidence [that] any list contained more than just the names of customers or vendors.

12. "Given the discrete market ... [Green] could easily ascertain companies in need of these services." *Hydraulic Exch. & Repair, Inc. v. KM Specialty Pumps, Inc.*, 690 N.E.2d 782, 786 (Ind. Ct. App. 1998). Indeed, Green's uncontroverted testimony was that he used INDOT's website and various directories of local officials to find potential customers.

13. Green knew the identities of the vendors and clients because he had been engaged in the same business for thirty years. He "had no need to resort to improper means to gain that information. Generally known or readily ascertainable information is outside the statutory protection of the Act." *Primecare* at 381.

14. "The fact that [Green] possesses certain knowledge acquired within the course of his employment does not mandate that, upon his departure, [Green] must wipe clean the slate of his memory. *Steenhoven v. College Life Ins. Co. of America*, [460] N.E.2d 973, 975 [n.7] (Ind. Ct. App. 1984).

15. "Goodwill generated between customers and a business has been considered a legitimate protectable interest that may be addressed by a reasonable non-competition agreement or

covenant not to compete," but Green is not a party to any such agreement. *Primecare* at 381–382.

16. Any Conclusion of Law more properly designated a Conclusion of Fact is designated as a Conclusion of Fact.

THEREFORE, the Court now finds as follows:

1. **Plaintiffs have failed to meet their burden of proof for the issuance of a preliminary injunction.** Plaintiffs' Motion for Preliminary Injunction is DENIED.

2. Per Defendants' request, the Court orders the following: from the date of this Order going forward, Green shall be divested of any and all rights associated with his 25% ownership interest in MGI other than the right to negotiate the sale/ disposition of his shares. Green may, however, be entitled to any dividend/disbursement made by MGI Traffic. Further, Green shall not be entitled to any proprietary information of MGI Traffic. Green's interest shall be comparable to that of a creditor.

Appellant's App. pp. 6–8 (emphases added). The Appellants now appeal.

# Standard of Review

The Plaintiffs argue that the trial court erred by denying their motion for a preliminary injunction. We summarized the law of preliminary injunctions in *Clay Township of Hamilton County ex rel. Hagan v. Clay Township Regional Waste District*:

> The grant or denial of a preliminary injunction is within the sound discretion of the trial court, and the scope of appellate review is limited to deciding whether there has been a clear abuse of discretion. When determining whether or not to grant a preliminary injunction, the trial court is required to make special

findings of fact and state its conclusions thereon. When findings and conclusions are made, the reviewing court must determine if the trial court's findings support the judgment. The trial court's judgment will be reversed only when clearly erroneous. Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment.

**The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor**. To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: 1) its remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; 2) it has at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) its threatened injury outweighs the potential harm resulting from the granting of an injunction; and 4) the public interest would not be disserved.

[W]hile we defer substantially to the trial court's findings of fact, we evaluate questions of law de novo.

838 N.E.2d 1054, 1062 (Ind. Ct. App. 2005) (emphasis added) (citations and internal quotation marks omitted).

[13]     We also note that the Appellants bore the burden of proof at trial. A judgment entered against a party who bore the burden of proof at trial is a negative judgment. *DeGood Dimensional Concepts, Inc. v. Wilder*, 135 N.E.3d 625, 632 (Ind. Ct. App. 2019) (citing *Stoffel v. JPMorgan Chase Bank*, 3 N.E.3d 548, 552

(Ind. Ct. App. 2014)). We will not reverse a negative judgment on appeal unless it is contrary to law. *Id.* To determine whether a judgment is contrary to law, we consider the evidence in the light most favorable to the judgment, together with all the reasonable inferences to be drawn therefrom. *Id.* (citing *Stoffel*, 3 N.E.3d at 553). A party appealing from a negative judgment must show that the evidence "points unerringly to a conclusion different than that reached by the trial court." *Id.* (citing *Smith v. Dermatology Assoc.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012)).

## Discussion and Decision

[14]     The Appellants claim that the trial court erred by denying their request to preliminarily enjoin Green from competing with MGI Traffic and from contacting or interacting with MGI Traffic's vendors and customers. The Appellants present three arguments in support of their claim.

[15]     They first contend that the trial court clearly erred in finding that the "partnership" between Green and Mark dissolved when Green stopped working for MGI Traffic and that "[t]he fact that Green still owns shares does not change the fact that he has withdrawn from or abandoned the partnership." Appellant's App. p. 6. The Appellants correctly note that MGI Traffic is a closely-held corporation, not a partnership. They therefore claim that the trial court erred when it applied partnership law to the corporation.

[16]     The Appellants acknowledge that "Indiana courts have characterized closely-held corporations as 'incorporated partnerships' and as such have imposed a

fiduciary duty upon shareholding 'partners' to deal fairly not only with the corporation but with fellow shareholders as well." *Melrose v. Capitol City Motor Lodge, Inc.,* 705 N.E.2d 985, 991 (Ind. 1998); *accord DiMaggio v. Rosario,* 52 N.E.3d 896, 905 (Ind. Ct. App. 2016), *trans. denied*. Indeed, the Appellants allege that Green has breached his fiduciary duty to the corporation and to his fellow shareholder Mark by competing with MGI Traffic.

[17]     Noting the similarities between traditional partnerships and closely-held corporations, the trial court applied principles of partnership law to the relationship between Green and Mark. Specifically, it concluded that Green abandoned the "partnership," i.e., the closely-held corporation of MGI Traffic. The Appellants argue that this misapplies partnership law and that a shareholder of a closely-held corporation cannot simply "abandon" a closely-held corporation. *See DiMaggio,* 52 N.E.3d at 905–06 (noting that a partnership can be dissolved by the withdrawal of a partner or abandonment, whereas a corporation is dissolved when the board of directors "propose dissolution for submission to the shareholders and the attendant notice of dissolution upon adoption by the requisite number of votes.")

[18]     Here, we need not decide whether the trial court erred by concluding that Green "abandoned" MGI Traffic, because the trial court based its conclusion on a determination that MGI Traffic had not met its burden of proof for the issuance of a preliminary injunction. Specifically, the trial court concluded that "[a]ny damages resulting from Green's actions while he was still part of the enterprise can be compensated for with a money judgment." Appellant's App.

p. 6. In other words, the trial court concluded that MGI Traffic failed to prove that its remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action.

[19] The Appellants contend that, because the market for traffic control systems is limited, and because Green himself testified that some customers were confused by his resumption of Mike Green, Inc., they have an inadequate remedy at law. But any damages caused by Green's allegedly wrongful usurpation of customers and business opportunities that rightfully belonged to MGI Traffic can be compensated by monetary damages. Indeed, Green admits that the Appellants have a colorable argument that he took business that would otherwise have gone to MGI Traffic prior to his resignation, but he contends that it is the Appellants' burden to prove this and that he only fulfilled certain orders because MGI Traffic could not fulfill them. Green also notes that he has alleged that MGI Traffic owes him money for supplies he personally paid for so that MGI could fulfill certain orders.

[20] We agree with Green, and the trial court, that this is a "mixed bag of evidence" for the trier of fact to sort out at trial and determine who owes whom, how much is owed, and to award monetary damages accordingly. Thus, the trial court did not clearly err in determining that the Appellants have an adequate remedy at law. Because they have an adequate remedy at law, the trial court properly denied the Appellants' request for a preliminary injunction.

Affirmed.

Kirsch, J., and Bailey, J., concur.